JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
JENNIFER S WANG (CSBN 233155)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6967
    Facsimile: (415) 436-6748
    jennifer.s.wang@usdoj.gov

Attorneys for Defendant

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFFREY W. TAM, | No. 07-2747 SI |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JOHN E. POTTER, Postmaster General, | Date: June 27, 2008 |
| Defendant. | Time: 9:00 a.m. |
| | Place: Courtroom 10, 19th Fl. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

NOTICE OF MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   ISSUES TO BE DECIDED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  UNDISPUTED FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A.  Plaintiff's Employment at the USPS. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   B.  Plaintiff's Application for Transportation Supervisor Position. . . . . . . . . . . . . 4

   C.  Requests for Reassignment to Driving Position. . . . . . . . . . . . . . . . . . . . . 5

   D.  Plaintiff's Work Schedule as a Bulk Mail Assistant. . . . . . . . . . . . . . . . . . 6

   E.  Plaintiff's Request for Leave and Overtime in February 2005. . . . . . . . . . . . . 7

   F.  Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      1. 2003 EEO Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      2. 2004 EEO Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      3. 2005 EEO Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      4. Instant Lawsuit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   A.    The Summary Judgment Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   B.    Plaintiff's Claim of Failure to Promote Are Untimely. . . . . . . . . . . . . . . . . 10

   C.    Plaintiff Claims of Age Discrimination and Harassment/Hostile Work
         Environment Have Not Been Exhausted. . . . . . . . . . . . . . . . . . . . . . . . . . 11

   D.    Plaintiff's Discrimination Claims Fail . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      1. Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      2. Failure to Promote. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      3. Delayed Reassignment to Driving Position. . . . . . . . . . . . . . . . . . . . . . 15

      4. Refusal to Change Work Schedule. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5.  Denial of Annual Leave from February 9-11, 2005. . . . . . . . . . . . . . . . . .  18

6.  Failure to Call Plaintiff to Work Overtime on February 12, 2005. . . . . . . .  19

7.  Alleged Intimidation on September 23, 2004. . . . . . . . . . . . . . . . . . . . . . .  20

E.  Plaintiff's Retaliation Claim Fails. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

F.  Plaintiff Cannot Establish a Hostile Work Environment/Harassment Claim . .  21

1.  Alleged Conduct was Not Severe or Pervasive. . . . . . . . . . . . . . . . . . . .  21

2.  Alleged Conduct Not Because of Plaintiff's Race or National Origin. . . . .  23

G.  Plaintiff Cannot Bring Claim for Violations of the Agreement. . . . . . . . . . . . .  24

H.  Plaintiff Cannot Obtain Punitive Damages from Defendant. . . . . . . . . . . . . . .  25

V.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Liberty Lobby, Inc.,
      477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Aragon v. Republic Silver State Disposal, Inc.,
      292 F.3d 654 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Avril v. Village South Inc.,
      934 F. Supp. 412 (S.D. Fla. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Baker v. Runyon,
      114 F.3d 668 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

Bowen v. United States Postal Serv.,
      459 U.S. 212 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

Brooks v. City of San Mateo,
      229 F.3d 917 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

Cambra v. Chevron International Exploration & Prod,
      2006 WL 2850032 (N.D. Cal. Oct. 4, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Celotex v. Catrett,
      477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Chuang v. University of Cal. Davis, Board of Trustees,
      225 F.3d 1115 (9th Cir.2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

Coleman v. Quaker Oats Co.,
      232 F.3d 1271 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
      43 F.3d 1311 (9th Cir.), cert. denied, 516 U.S. 869 (1995). . . . . . . . . . . . . . . . .   10

Deines v. Texas Department of Protective and Regulatory Services,
      164 F.3d 277 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

Dove v. Bayer Healthcare LLC, Number C 05-02873 JSW,
      2006 WL 1663845 (N.D. Cal. June 15, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . .   14

Ellison v. Brady,
      924 F.2d 872 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

Fahim v. Marriott Hotels Services, Inc.,
      2008 WL 1821513 (S.D. Tex. Apr. 22, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . .   17

Farragher v. City of Boca Raton,
      524 U.S. 775 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21, 23

_Fernandez v. Wynn Oil Co.,_
      653 F.2d 1273 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

_Fishback v. D.C. Department of Corrections,_
      86 F.3d 1180 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

_Ford v. Sheriff-Coroner's Dep't of Contra Costa Cty,_
      1998 WL 898468, (N.D. Cal. Dec. 21, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

_Garity v. Potter,_
      2008 WL 872992 (D. Nev. Mar. 27, 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

_Hardage v. CBS Broadcasting Inc.,_
      427 F.3d 1177 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

_Nicholson v. Hyannis Air Serv., Inc.,_
      2008 WL 822508 (D. Guam Mar. 27, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

_Harris v. Forklift System, Inc.,_
      510 U.S. 17 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

_Helgeson v. America International Group, Inc.,_
      44 F. Supp. 2d 1091 (S.D. Cal. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

_Johnson v. United States Postal Serv.,_
      756 F.2d 1461 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

_Johnson v. United States Treasury Department,_
      27 F.3d 415 (9th Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

_Kennedy v. United States Postal Serv.,_
      145 F.3d 1077 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

_Kortan v. State of California,_
      5 F. Supp. 2d 843 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

_Leong v. Potter,_
      347 F.3d 1117 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

_Manatt v. Bank of America,_
      339 F.3d 792 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

_McDonnell Douglas Corp. v. Green,_
      411 U.S. 792 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

_McGinest v. GTE Serv. Corp.,_
      360 F.3d 1103 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

_McGowan v. City of Eufala,_
      472 F.3d 736 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

_Millbrook v. IBP, Inc.,_
      280 F.3d 1169 (7th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell v. Toledo Hospital,
      964 F.2d 577 (6th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Moran v. Selig,
      447 F.3d 748 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

National Railroad Passenger Corp. v. Morgan,
      536 U.S. 101 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Odina v. Westin Tucon Hotel Co.,
      991 F.2d 595 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Oncale v. Sundowner Offshore Services,
      523 U.S. 75 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Ong v. Cleland,
      642 F.2d 316 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Palesch v. Missouri Comm'n on Human Rights,
      233 F.3d 560 (8th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Reeves v. Sanderson Plumbing Products, Inc.,
      530 U.S. 133 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Schuler v. Chronicle Broadcasting Co.,
      793 F.2d 1010 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Shah v. Mt. Zion Hospital & Medical Ctr.,
      642 F.2d 268 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Smith v. County of Humboldt,
      240 F. Supp. 2d 1109 (N.D. Cal. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Sommatino v. United States,
      *255 F.3d 704 (9th Cir. 2001).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

St. Mary's Honor Center v. Hicks,
      509 U.S. 502 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Stupy v. United States Postal Serv.,
      951 F.2d 1079 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

Texas Department of Community Affairs v. Burdine,
      450 U.S. 248 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Truex v. Garrett Freigthlines,
      784 F.2d 1347 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Vasquez v. County of Los Angeles,
      349 F.3d 634 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 22

1

**FEDERAL STATUTES**

2   39 U.S.C. § 1208(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

3   42 U.S.C. § 1981a(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

4   29 C.F.R. § 1614.105(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5   Fed. R. Civ. P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on June 27, 2008 at 9:00 a.m. in Courtroom 10, located on the 19th Floor of 450 Golden Gate Avenue in San Francisco, California, defendant will move for summary judgment under Federal Rule of Civil Procedure 56, on the ground plaintiff has not established unlawful discrimination, harassment, retaliation, or breach of contract as a matter of law.  This motion is based on this notice; the following memorandum of points and authorities; the concurrently-filed declarations of Balvinder Chadha, Keith Inouye, and Jennifer S Wang; the pleadings and papers on file in this action; defendant's reply; and such oral argument as the Court may permit.

The Ninth Circuit has held that the following notice should be given to *pro se* plaintiffs facing a summary judgment motion:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

> Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

## RELIEF SOUGHT

Defendant seeks an order granting him summary judgment.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In this Title VII and Age Discrimination in Employment Act ("ADEA") action, plaintiff alleges discrimination based on age, race and national origin, harassment based on race and

national origin, and retaliation.[1]  Plaintiff bases his discrimination claims on his failure to obtain a promotion, denial of his requests for reassignment driving position, denial of his request to change his work schedule in 2005, denial of plaintiff's request for leave in February 2005, his manager's failure to call him in to work overtime on February 12, 2005, and his manager's alleged attempt to intimidate him.  Plaintiff alleges defendant changed his 2005 work schedule in retaliation for his 2003 EEO activity.  Plaintiff further claims breach of the collective bargaining agreement (the "Agreement") between the American Postal Workers Union ("APWU") and United States Postal Service ("USPS") and seeks punitive damages.

Defendant is entitled to summary judgment on all of plaintiff's claims for the following reasons: (1) plaintiff failed to timely file his Equal Employment Opportunity ("EEO") complaint and exhaust his administrative remedies; (2) plaintiff cannot establish a prima facie case of discrimination; (3) plaintiff cannot establish that he suffered an adverse employment action as a result of engaging in protected activity; (4) none of the alleged harassing conduct plaintiff complains of is sufficiently severe as to alter the conditions of employment; (4) plaintiff cannot establish that any alleged harassing conduct was directed at him because of his race or national origin; (5) plaintiff cannot maintain a claim for breach of the Agreement; and (8) plaintiff cannot obtain punitive damages against defendant.  Even if plaintiff could make out a prima facie case of discrimination or retaliation, defendant had legitimate reasons for its employment actions related to plaintiff.  Plaintiff did not receive a promotion because other candidates were better qualified.  Once plaintiff and the other bulk mail assistants completed annual bidding for positions, the reporting time of the position plaintiff obtained could not be changed without effecting the other bulk mail assistant positions, and thus, the effective operation of USPS' Transportation & Networks Division.  Defendant did not reassign plaintiff in 2002 because there were no full-time driver vacancies.  Defendant reassigned plaintiff in

---

[1]  Plaintiff's age discrimination claim is limited to his allegation that defendant failed to promote him. (*See* Declaration of Jennifer S Wang ("Wang Decl.") Ex. A (Excerpts of Tr. of 12/12/07 Dep. of Jeffrey W. Tam ("Tam Dep") 42:2-43:10).

2005 his requested position became available.  Defendant denied plaintiff's February 2005 leave request because he did not provide sufficient notice. Defendant did not call plaintiff for overtime on February 12, 2005 because use of another clerk was more cost-effective.

Accordingly, defendant requests that the Court grant summary judgment in his favor.

## II.    ISSUES TO BE DECIDED

Here the issues to be decided are: (1) Did plaintiff timely file his and exhaust his administrative remedies; (2) Can plaintiff establish a prima facie case of discrimination based on age, race or national origin; (3) Can plaintiff establish that defendant's legitimate, non-discriminatory reasons for its actions were pretextual, where he has produced no evidence of pretext; (4) Can plaintiff established a harassment claim where, as a matter of law, he has not shown that he suffered severe or pervasive harassment; (8) Can plaintiff establish a claim of harassment where he has not shown that he suffered any harassment because of his race or national origin; (9) Can plaintiff maintain a cause of action for breach of a collective bargaining agreement; and (10) Can plaintiff obtain punitive damages against defendant?

## III.   UNDISPUTED FACTS

### A.  Plaintiff's Employment at the USPS

Plaintiff, Jeffrey Tam is 57 years old and of Chinese national origin.  Plaintiff has been employed with the USPS at its Processing and Distribution Center ("P&DC") in Oakland, California ("Oakland P&DC") since 1980.  (Declaration of Jennifer S Wang ("Wang Decl.") Ex. 1 (Excerpts of Tr. of 12/12/07 Dep. of Jeffrey W. Tam ("Tam Dep.")) 14:4-16).  Plaintiff began his employment with the USPS as a part-time flexible Motor Vehicle Operator ("MVO").  (*Id.* 16:9-16).  Around or about 1983, plaintiff became a full-time Tractor Trailer Operator ("TTO").  (*Id.* 17:17-18:2).  Both MVOs and TTOs are driving positions within the Postal Vehicle Services Operations ("PVS") (also known as Motor Vehicle Craft Unit) in the Postal Service's Transportation and Networks Division ("Transportation").  (*See Id.* 16:17-17:1, 18:7-8; Declaration of Keith Inouye ("Inouye Decl.") ¶ 5).

In 1999, plaintiff bid for a non-driving position as a bulk mail assistant within Transportation.  (Tam Dep. 18:16-19:3).  As a bulk mail assistant, plaintiff's duties included

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

documenting and monitoring movement of postal trucks from station to station and responding to calls from drivers. (*Id*. 20:9-21:10). At all times relevant to the complaint, plaintiff had the least seniority of the bulk mail assistants. (*Id*. 97:17-98:14). Around September 2005, plaintiff received a requested reassignment to part-time flexible MVO position. Since March 2006, plaintiff has worked as a full-time TTO. (Inouye Decl. ¶ 11).

**B. Plaintiff's Application for Transportation Supervisor Position**

Plaintiff applied for a promotion to transportation supervisor approximately five times, in 1999, 2000, 2001, 2002, and 2003. (Tam Dep. 48:9-21).[2] From 1999 to 2003, Keith Inouye, Manager of Transportation at the Oakland P&DC, made the final selection. During each year in which plaintiff applied for a promotion, a Review Board (or "Board"), comprised of three members selected from a list provided to Inouye by the USPS Personnel Department ("Personnel"), conducted a first round review of applications for the position. (Inouye Decl. ¶ 6). The list provided by Personnel included USPS managers that had completed the training required for service on a Board. (*Id*.).

A different Board was used in each of the years at issue. (*Id*.). The Boards reviewed the application materials submitted by the candidates, and at times, also conducted screening interviews. (*Id*. ¶ 7). The Boards then submitted names of the most qualified applicants to Inouye. (*Id*.). Inouye interviewed candidates whose names were submitted to him by the Board and made his selection from that group. (*Id*.). Accordingly, to be selected as a transportation supervisor, candidates had to pass Board review. (*Id*.; Tam Dep. 63:7-12).

During the interviews he conducted, Inouye asked each candidate the same set of questions; these questions were intended to hep Inouye determine if candidates understood the responsibilities and duties of a transportation supervisor. (Inouye Decl. ¶ 7). For example, Inouye created hypothetical situations typically encountered by transportation supervisors, and asked candidates how they would act in these situations. (*Id*.). In addition, Inouye questioned

---

[2] Plaintiff applied for a transportation supervisor position in 1994, but does not allege discrimination related to his failure to receive the1994 position. (Tam Dep. 48:9-25).

candidates on Transportation and USPS policies and procedures.  (*Id*.).  Inouye based his final

decision on the candidates' qualifications and their interview responses. (*Id*.).

Most Board members worked outside the Oakland P&DC.  A typical Board used by

Inouye included a manager of Transportation for another district, a manager of Mail Processing,

and a Postmaster of a post office serviced by PVS.  (*Id*. ¶ 6)  With the exception of one 2002

Board member, plaintiff did not know and had never had any interaction with the Board

members.  (Tam Dep. 61:23-62:25).  In 2002, plaintiff interviewed with the Board, but did not

pass the Board's review.  (*Id*. 70:1-10).  Plaintiff passed the Board's review once, in 2003.

(Inouye Decl. ¶ 8).  In 2003, Inouye interviewed plaintiff, but plaintiff did not fully answer each

of the interview questions. (*Id*.).   Inouye selected Henry Orozco, a TTO, in 2003. (*Id*.).

### C.  Requests for Reassignment to Driving Position

Around or about May 2002, plaintiff made his first request for reassignment to a driving

position as a full-time TTO.  Plaintiff submitted a written request for reassignment to Inouye.

(*Id*. ¶ 9; Wang Decl. Tam Dep. 92:14-16 & internal Ex. 3 (5/02 request)).  Around July 2002,

plaintiff submitted a request for reassignment to a full-time TTO position to Virginia Glover, a

Human Resources Manager at the USPS.  (*Id*. 94:4-18 & internal Ex. 4 (7/02 request)).

Plaintiff did not receive a reassignment in 2002 because no vacancies were available.  (Inouye

Decl. ¶ 9).  The USPS gives first priority for available full-time TTO positions to current

drivers, *i.e.*, TTOs and part-time flexible MVOs. (*Id*. ¶ 9, Ex. A (Agreement Excerpt)).   At the

time of his request, plaintiff worked as a bulk mail assistant, not as a driver. (*Id*. ¶ 9).

Around or about February 2005, plaintiff requested reassignment to a driving position as

a part-time flexible MVO.  (Tam Dep. 113:10-23, 116:3-117:21 & internal Ex. 5 (2/05

request)).   In February 2005, plaintiff submitted his request to Balvinder Chadha, Manager of

PVS and Inouye.  (Tam Dep. 113:10-23).  Around October 15, 2003, the USPS had instituted a

new website – eReassign – to process requests for voluntary reassignments.  (Declaration of

Balvinder Chadha ("Chadha Decl.") ¶8, Ex. C (eReassign Notice)).  Accordingly, plaintiff was

informed that, consistent with the USPS' new policy, plaintiff had to apply for his reassignment

via the eReassign website. (*Id.* ¶ 8; Tam Dep. 118:11-16). Plaintiff submitted his application via the eReassign website around May 2005 (Tam Dep. internal Ex. 6 (eReassign Application)), and obtained reassignment to a part-time flexible MVO position around September 17, 2005. (*Id.* 118:21-119:3 & internal Ex. 8 (9/05 letter)).

### D. Plaintiff's Work Schedule as a Bulk Mail Assistant

Each year, bulk mail assistants bid for positions for the coming year. (Chadha Decl. ¶ 3). Prior to the annual bidding process, the Transportation determines the positions ("bids"), or tour assignments, necessary to efficiently and effectively carry out its operations. (*Id.*). Transportation determines the reporting times and days for each position that will be offered in the annual bidding process. (*Id.*) Chadha had primary responsibility for creating the schedule for bulk mail assistant positions. (*Id.*). Chadha, with help from his staff and input from the Mail Processing Division and Postmasters of post offices within the Oakland service area regarding mail flow, designed the bulk mail assistant schedules to meet the primary goal of Transportation – the timely pick-up and delivery of mail. (*Id.*). The bulk mail assistant schedule and positions reflect business judgments regarding how to best ensure sufficient coverage for all tours while minimizing the need to incur overtime costs. (*Id.*). In determining the reporting time and days for the bulk mail assistant positions, Chadha did not consider which employee would likely obtain each of the positions during annual bidding. The positions are not tailored for one particular individual. (*Id.*).

Once the positions are determined, employees then bid for the available positions for the coming year. (*Id.*). Personnel administers the annual bidding process. (*Id.*). Bidding is based on seniority. (*Id.*). From 1999 to 2005, plaintiff had the least seniority of all the bulk mail assistants. (Tam Dep. 97:20-98:17). Accordingly, plaintiff took whatever bid remained after the other bulk mail assistants made their selections. (*Id.* 98:11-20). From 1999 to 2005, plaintiff received the last vacant position – the relief bulk mail assistant. (Chadha Decl. ¶ 4). In that position, plaintiff relieved assistants on all three tours, and thus, had varying start times during the week and, at times, non-consecutive days off. (*Id.*).

In1999, when plaintiff first opted to bid for a bulk mail assistant position, plaintiff bid for the relief position. (Tam Dep. 18:23-25, 90:3-15, 92:11-13).  This position required the following schedule:  Sunday: 7:00 a.m. to 3:30 p.m.; Monday: 3:00 p.m. to 11:30 p.m.; Tuesday: 10:00 a.m. to 6:30 p.m; Wednesday: 7:00 a.m. to 2:30 p.m.; Thursday: Scheduled Day Off ("SDO" or "Off"); Friday: Off; Saturday: 7:00 a.m. to 3:30 p.m. (*Id*.).  From 2000 to 2002, the reporting times and days for the relief position remained the same.  (*Id*.).

Around December 2002, prior to annual bidding, Transportation restructured the reporting times and days of the bulk mail assistant positions for 2003  to allow for additional coverage during its busiest times, from 4:00 a.m. to 1:00 p.m. from Monday through Wednesday.  (Chadha Decl. ¶ 5, Ex. A (Schedules)).  From January 2003 to around August or September 2003, the schedule for the relief position was:  Sunday: 7:00 a.m. to 3:30 p.m.; Monday: 3:00 p.m. to 11:30 p.m.; Tuesday: Off; Wednesday: Off; Thursday: 11:00 p.m. to 7:30 a.m.; Friday: 11:00 p.m. to 7:30 a.m.; Saturday: 7:00 a.m. to 3:30 p.m. (*Id*. Ex. A; Tam Dep. 36:2-6).

As part of a 2003 EEO settlement, defendant agreed to allow plaintiff to work from 4:30 a.m. to 1:00 p.m. on Thursdays and Fridays.  (Tam Dep. 35:2-37:15 & internal Ex. 9 (2003 EEO Settlement Agreement)).   Plaintiff continued to work this schedule in 2004.  (*Id*. 36:8-37:17).

The 2005 bulk mail assistant schedule was restructured to create more overlap in the reporting hours for the positions in order to reduce the need to require an assistant to work over his or her scheduled hours, and thus, reduce overtime costs.  (Chadha Decl. ¶ 5).  The reporting times and days for the relief position was as follows: Sunday: 7:00 a.m. to 4:00 p.m.; Monday: Off; Tuesday: 5:00 a.m. to 2:00 p.m.; Wednesday: 7:00 p.m. to 4:00 p.m.; Thursday: 3:00 p.m. to 12:00 a.m.; Friday: 4:00 p.m. to 1:00 a.m.; Saturday: Off.  (*Id*. Ex. A; Tam Dep. 37:19-25). In 2005, plaintiff worked as the relief bulk mail assistant until his reassignment to a driving position in September 2005.  (Tam Dep. 37:19-38:7).

**E.  Plaintiff's Request for Leave and Overtime in February 2005**

On January 27, 2005, plaintiff submitted a request for annual leave from February 9-11, 2005 for Chinese New Year to his supervisor, Debbie Nails.  (Tam Dep. 171:23-172:14).  Although Nails initially approved the request, the request was ultimately denied by Chadha.  (*Id.*). Since July 2004, to allow time for managers to ensure proper work coverage and schedule for employee absences, Transportation had required a minimum of two-weeks notice for requests leave requests, except in emergencies. (Chadha Decl. ¶ 6, Ex. B (July 2004 notice)).  Plaintiff did not provide two-weeks notice. (*Id.*).  Plaintiff was the only bulk mail assistant scheduled for his February 9-11, 2005 shifts.  Another assistant, Woodrow Staten, had been scheduled to work those shifts had already requested leave for that week. (*Id.*).

Staten was scheduled to return to work on February 12, 2005.  On the morning of February 12, 2005, Stated called to request another day of leave due to flight delays on his return trip.  (*Id.* ¶ 7).  February 12, 2005 was a scheduled day off for plaintiff.  (*Id.*).  Chadha determined that Staten's absence could be sufficiently covered by calling in another bulk mail assistant scheduled to work on February 12, 2005, to begin his shift four hours earlier.  (*Id.)*.

**E.  Procedural History**

**1.  2003 EEO Complaint**

In 2003, plaintiff filed his first EEO complaint ("2003 EEO complaint"), related to his 2003 work schedule, and settled the complaint on October 22, 2003.  (Tam Dep. 123:20-125:9, Ex. 9).  Defendant "agreed to a 4:30 a.m. starting time on Thursdays and Fridays effective tomorrow morning," for plaintiff in 2003.  (*Id.* internal Ex. 9).

**2.  2004 EEO Complaint**

On or about October 26, 2004, plaintiff contacted the EEO Counselor alleging race and national origin discrimination.  (*Id.* internal Ex. 11 (10/04 Pre-Complaint Counseling)).   On December 20, 2004, plaintiff filed an EEO complaint alleging race and national origin discrimination based on Inouye's alleged attempt to intimidate plaintiff on September 23, 2004, plaintiff's work schedule, defendant's failure to promote plaintiff, denial of his reassignment requests, and failure to investigate the damage to plaintiff's personal television set.  (Wang

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Decl. Ex. D (2004 EEO Complaint)).  On February 15, 2005, plaintiff sent a letter amending his EEO complaint to allege that (1) he had not yet received an agreed upon pay adjustment; (2) in retaliation for his 2003 EEO complaint, defendant restructured his 2005 schedule; (3) Chadha disapproved his annual leave request for February 9-11, 2005; and (4) his was not called in for overtime on February 12, 2005.  (*Id*. at 10-11).  On March 9, 2007, the EEOC, Office of Federal Operations ("OFO"), affirmed the agency's decision that plaintiff's allegation of intimidation failed to state a claim and failure to promote claims were untimely.  (*Id*. Ex. E (3/07 Decision)). The OFO further affirmed the agency's finding of no discrimination with respect to plaintiff's remaining claims.  (*Id*.)

### 3.  2005 EEO Complaint

On October 4, 2005, plaintiff filed an EEO complaint alleging that his supervisor, Gloria Benavides, disallowed 1.5 hours of overtime earned by plaintiff on June 26, 2005; plaintiff's acting supervisor, Nails, harassed him; and on September 15, 2005, plaintiff was reassigned to a part-time flexible MVO position rather than a full-time TTO position because of his race and national origin.  (*Id*. Ex. F (2005 EEO Complaint)).   The agency issued a final decision, finding no discrimination, on January 12, 2007.  (*Id*. Ex.G (1/07 Decision)).

### 4.  Instant Lawsuit

Plaintiff filed the instant lawsuit on May 25, 2007, an amended complaint on September 28, 2007, and a second amended complaint ("SAC") on March 25, 2008.  In the SAC, plaintiff alleges that his applications for promotion, request for reassignment to a full-time driving position, 2005 request for a schedule change, and request for leave from February 9-11, 2005 were denied because of discrimination.  Plaintiff also alleges that his manager tried to intimidate him and that he was not called in for overtime on February 12, 2005 because of discrimination.  (SAC ¶¶ 1-6; *see also* Tam Dep. 41:8-43:10).  Plaintiff alleges harassment and

breach of the Agreement, and seeks punitive damages. (Wang Decl. Ex. H (Agreement Excerpts); SAC ¶¶ 7-9).[3]

## IV.  ARGUMENT

### A.    The Summary Judgment Standard

Summary judgment is proper where there is no genuine issues as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is not required to establish any of its affirmative defenses in order to succeed on summary judgment, but can simply point to the absence of evidence supporting the plaintiff's claims.  *Celotex*, 477 U.S. at 322-23; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir.), *cert. denied*, 516 U.S. 869 (1995).  Once the moving party points out the absence of evidence, the non-moving party must come forward with "specific facts" showing a genuine (and material) issue for trial.  Fed. R. Civ. P. 56; *Daubert*, 43 F.3d at 1315. The existence of a "scintilla" of evidence supporting the non-moving party's position is insufficient.  Rather, the non-moving party must establish sufficient evidence on each element of each claim, such that a jury could return a verdict in her favor.  *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 323.  If the non-moving party fails to do so, the moving party is entitled to judgment. *Celotex*, 477 U.S. at 323.

### B.    Plaintiff's Claim of Failure to Promote Are Untimely

Plaintiff's discrimination claim based on defendant's failure to select him for transportation supervisor vacancies in 1999 to 2003 is untimely.  All EEO claims must be first adjudicated administratively before proceeding to district court.  "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate

---

[3]  Plaintiff also alleges "human rights violation" and "mental stress." (SAC ¶¶ 9-10).  The "human rights violation" allegation appears to be part of plaintiff's claims regarding his work schedule and request for punitive damages, rather than a separate cause of action.  (*See* Tam Dep. 42:2-7).  Plaintiff cannot assert a claim for intentional infliction of emotional distress.  The Federal Tort Claims Act is the exclusive remedy for a tort action against a government agency. *Kennedy v. United States Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1988).

1   actionable unlawful employment practice," that must be separately exhausted before the EEOC.

2   *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

3       Pursuant to 29 C.F.R. § 1614.105(a)(1), an aggrieved employee must contact an EEO

4   Counselor within 45 days of an alleged discriminatory act, or the effective date of an alleged

5   discriminatory personnel action.  Failure to comply with the 45-day limitations period is fatal to

6   a plaintiff's discrimination claim.  *Johnson v. United States Treasury Dep't.*, 27 F.3d 415, 416

7   (9th Cir.1994).  The alleged discriminatory acts plaintiff complains of occurred between 1999

8   and 2003.  None of these acts occurred within the 45 days immediately preceding plaintiff's

9   October 26, 2004 contact with an EEO Counselor regarding his failure to obtain a promotion.

10  (*See Id*. 81:20-21, internal Ex. 11).  Plaintiff admits that he failed to file an EEO complaint

11  about these promotion decisions within the 45 days limitations period.  (*Id*. 87:13-88:7, *see id.*

12  53:11-15, 59:6-8, 75:7-11).  Thus, plaintiff's failure to promote claim is untimely.

13  **C.  Plaintiff Claims of Age Discrimination and Harassment/Hostile Work
    Environment Have Not Been Exhausted**

14

15      Plaintiff alleges a two new theories of discrimination – age discrimination and

16  harassment – that were not raised in his prior EEO complaints.  Federal courts only have

17  jurisdiction over claims reasonably related to allegations of the EEO complaint.  *See*

18  *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001). After alleging one theory of

19  discrimination in an administrative complaint, a plaintiff cannot switch to a different theory in

20  litigation.  *Shah v. Mt. Zion Hosp. & Med. Ctr.*, 642 F.2d 268, 272 (9th Cir. 1981) (race, color,

21  and religious discrimination claims never investigated by the EEOC dismissed even though

22  EEO complaint alleged national origin and sex discrimination and the same employer actions);

23  *Ong v. Cleland*, 642 F.2d 316, 318 (9th Cir. 1981) (plaintiff failed to exhaust where Title VII

24  claim involved theory of discrimination not been raised in EEO complaint even though same

25  employer actions were alleged).  In his October 26, 2004 request for EEO Counseling and his

26  December 20, 2004 EEO complaint, plaintiff alleged two theories of discrimination – race and

27  national origin – to explain defendant's failure to promote plaintiff.   (Tam Dep. internal Ex. 11

28  & Wang Decl. Ex. D).  Here, for the first time, plaintiff alleges that defendant failed to promote

him because of his age.  (Tam Dep. 42:14-43:10).  Plaintiff did not allege harassment in his 2003, 2004 or 2005 EEO complaints. (Wang Decl. Exs. D & F; *see* Tam Dep. 123:24-6 internal Ex. 11). Thus, plaintiff's age discrimination and harassment claims are barred for failure to exhaust administrative remedies.

### D.  Plaintiff's Discrimination Claims Fail

Plaintiff's bases his discrimination claims on the following actions: defendant's failure to promote plaintiff; failure to reassign plaintiff in 2002; refusal to change plaintiff's work schedule in 2005; denial of plaintiff's request for annual leave from February 9-11, 2005; failure to call plaintiff in to work overtime on February 12, 2005; and attempt to intimidate plaintiff.  Each of these claims fail, either because plaintiff cannot meet his burden of establishing a prima facie case of discrimination or because plaintiff cannot rebut defendant's legitimate, non-discriminatory reasons for his actions.

### 1.  Legal Standard

Plaintiff has the burden of establishing a prima facie case of discrimination by a preponderance of the evidence.  *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).  To establish a prima facie case of race or national origin discrimination under Title VII, a plaintiff must show (1) he belongs to a class of persons protected by Title VII, (2) he performed his job satisfactorily (or was qualified for the position), (3) he suffered an adverse employment action, and (4) similarly situated employees outside his protected class were treated more favorably than he was.  *Leong v. Potter,* 347 F.3d 1117, 1124 (9th Cir. 2003). Summary judgment for the defendant is warranted where the plaintiff has failed to establish any one of those four elements.  *See id.*, 347 F.3d at1124.

Similarly, to establish an ADEA claim, an employee must first establish a prima facie case of age discrimination by showing that (1) at the time of the adverse employment action, he was 40 years of age or older; (2) he was qualified for an open position; and (3) the defendant selected a substantially younger employee with equal or inferior qualifications.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000); s*ee Cambra v. Chevron Int'l Exploration & Prod*, 2006 WL 2850032, at *4 (N.D. Cal. Oct. 4, 2006).

1    Once plaintiff sets forth a prima facie case of discrimination,"the burden of production

2    shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment

3    decision." *Leong*, 347 F.3d at 1124.  Once the defendant provides such a reason, the

4    presumption of discrimination drops from the case, and the plaintiff must demonstrate that the

5    articulated reasons are a pretext for discrimination by "either directly persuading the court that a

6    discriminatory reason more likely motivated the employer or indirectly by showing that the

7    employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs*

8    *v. Burdine*, 450 U.S. 248, 256 (1981). The ultimate burden then shifts back to plaintiff to show

9    that the reason articulated is pre-textual and that discrimination is the true reason for the

10   adverse action.  *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519 (1993).  To rebut that

11   presumption and proceed to trial, the plaintiff must produce "specific and substantial" evidence

12   that the employer's reasons are a pretext for discrimination.  *Aragon v. Republic Silver State*

13   *Disposal, Inc.*, 292 F.3d 654, 658-9 (9th Cir. 2002).  That is, he must prove his protected trait

14   "actually motivated the employer's decision" and had a "determinative influence on the

15   outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000).  "A

16   plaintiff's mere belief, conjecture, or speculation that he or she was discriminated against is not

17   sufficient to support an inference of discrimination or to satisfy the plaintiff's burden in

18   responding to a properly supported summary judgment motion."  *Avril v. Village South Inc.*,

19   934 F. Supp. 412, 417 (S.D. Fla. 1996).

20            **2.  Failure to Promote**

21            Defendant has a legitimate, non-discriminatory reason for deciding not to select plaintiff

22   for a promotion to transportation supervisor: plaintiff was not the most qualified candidate for

23   the vacancies in 1999, 2000, 2001, 2002 and 2003.[4]  Choosing to hire, retain or promote the

24   person with superior qualifications is always a legitimate reason.  *See, e.g., Fernandez v. Wynn*

25   *Oil Co.*, 653 F.2d 1273, 1275-76 (9th Cir. 1981).

26

27   _____

28        [4]  Plaintiff alleges age, race and national origin discrimination in his failure to obtain a
     promotion (Tam Dep. 42:-14-20), but cannot establish a prima facie case of age discrimination
     because, with the exception of the 2003 vacancy, he has not identified the allegedly younger
     employees that obtained the positions he sought.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff acknowledges that in order to be selected for a final round interview with Inouye for the transportation supervisor vacancies, applicants had to pass the first round of the application process – review by a three-member Board. (Tam Dep. 63:1-12; *see also id.* 64:15-22). Based on its review of the applications and, at times, an interview with candidates, the Board provided Inouye with a list of the best qualified applicants. (Inouye Decl. ¶ 7). Inouye, the selecting official for each of the transportation supervisor vacancies at issue, explained that in 1999, 2000, 2001, and 2002, plaintiff did not pass the first round review by the Board. (*Id.* ¶ 8). Although plaintiff passed the Board's review in 2003, plaintiff failed to respond to all of the questions asked of him during his final round interview with Inouye. (*Id.*). Based on his application materials and interview responses, Inouye determined Orozco to be better qualified for the 2003 position than plaintiff. (*Id.*).

Plaintiff has produced no evidence that defendant's reasons for not selecting plaintiff for the transportation supervisor vacancies are pretextual, much less evidence that is "specific and substantial." Plaintiff has admitted that his non-selection for the 2003 promotion did not result from discrimination. Rather, plaintiff asserts that Inouye selected Orozco for the 2003 promotion as part of an EEO settlement agreement. (Tam Dep. 83:22-84:5); *See Hicks*, 509 U.S. at 523-24 (Title VII provides redress only against employers who are proven to have taken adverse employment action *by reason of* membership in a protected class); *cf. Dove v. Bayer Healthcare LLC*, No. C 05-02873 JSW, 2006 WL 1663845, at *6 (N.D. Cal. June 15, 2006) (that under-qualified individual obtained promotion based on friendship with supervisor did not constitute evidence that other similarly situated employees were treated more favorably).

Plaintiff has provided no basis to suggest that the Board's decisions were motived by discrimination. Rather, plaintiff acknowledges Board members came from other offices and that with the exception of one member in 2002, plaintiff did not know who sat on the Boards. (*Id.* 61:18-62:25). The only time plaintiff obtained a Board interview was in 2002. Plaintiff recognized only one member of that Board, Jackson, and testified that although he recognized her because she worked at the Oakland P&DC, he had never had any interaction with her. (*Id.* 64:23-65:7, 66:24-68:20). Finally, plaintiff admits that Inouye has never said or mentioned

1    plaintiff's race or age to him (*Id.* 55:13-18, 56:8-16), and offers only speculation that Inouye's

2    promotion decisions were motived by discrimination.

3    Plaintiff's own subjective opinion regarding his skills is insufficient to demonstrate

4    pretext for discrimination. *See Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011

5    (9th Cir. 1986). Without more, disparities in qualifications are not enough to demonstrate

6    discriminatory intent unless those disparities are so favorable to the plaintiff that there can be

7    no reasonable dispute that the plaintiff was clearly better qualified for the position at issue. *See*

8    *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1179 (7th Cir. 2001); *Deines v. Texas Dep't of*

9    *Protective and Regulatory Servs.*, 164 F.3d 277, 279 (5th Cir. 1999). Moreover, courts have

10   held that the employer's unfettered discretion to choose among qualified candidates should be

11   respected and have refused to second guess employers' business judgments. *Millbrook*, 280

12   F.3d at 1181; *Odina v. Westin Tucon Hotel Co.*, 991 F.2d 595, 602 (9th Cir. 1993) ("The

13   district court must not substitute its own judgment about whether the employment decisions

14   were wise, or even fair, for that of the employer.").

15   Even if plaintiff could demonstrate that Inouye and the Board incorrectly assessed his

16   qualifications or interview responses, an employer's reasoned decision based on incorrect facts

17   is not evidence of pretext. *See Fishback v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1883

18   (D.C. Cir. 1996) ("This issue is not the correctness of desirability of [the] reasons offered . . .

19   [but] whether the employer honestly believes in the reason it offers") (internal quotation marks

20   omitted); *Nicholson v. Hyannis Air Serv., Inc.*, 2008 WL 822508, at *7 (D. Guam Mar. 27,

21   2008). Having no specific and substantial evidence of discriminatory intent, plaintiff cannot

22   establish his discrimination claim.

23   **3. Delayed Reassignment to Driving Position**

24   Plaintiff cannot establish a prima facie case of discrimination based on defendant's

25   denial of his request for reassignment to a driving position in 2002.[5] First, failure to receive a

26

27

28

---

[5] Plaintiff also applied for reassignment to a part-time MVO position in 2005. It is
undisputed that plaintiff received the requested reassignment in September 2005, four months
after he submitted his request through the eReassign website – the vehicle used by the USPS to
process voluntary reassignment requests. (Chadha Decl. ¶ 8; Tam Dep. internal Exs. 6, 8).

requested reassignment does not constitute an adverse employment action.  An adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of the plaintiff's employment.  *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir.2000).  Where, as here, plaintiff cannot identify any material detriment from not receiving a reassignment –  other than his own personal preference or subjective feeling regarding the bulk mail assistant and driving positions – the denial of his 2002 reassignment requests do not constitute an adverse employment action.  *See Ford v. Sheriff-Coroner's Dep't of Contra Costa Cty*, 1998 WL 898468, at * 2-4 (N.D. Cal. Dec. 21, 1998) (plaintiff failed to show denial of transfer was adverse employment action where she failed to "identify some factor other than [her] own personal preference or [her] subjective feelings regarding each [position] in order to demonstrate an adverse action."); *McGowan v. City of Eufala*, 472 F.3d 736 (10th Cir. 2006) (the defendant's failure to assign the plaintiff to day shift not materially adverse where preference for shift was purely for personal reasons and she was not permanently denied the shift); *Kortan v. State of California*, 5 F. Supp. 2d 843, 853-54 (9th Cir. 1998) (denial of transfer request not actionable).

    The only basis for plaintiff's assertion that he was materially harmed by his failure to receive his requested reassignment in 2002 is his personal preference for the schedules available for drivers of his seniority as compared to the schedule available to him as a bulk mail assistant.  Plaintiff explained that in 1999, he bid for the relief bulk mail assistant position, and that the schedule for that position remained unchanged from 1999 to 2002.  (Tam Dep. 92:2-16).  Plaintiff stated that he found it personally difficult to keep the hours he bid for in 1999 because of his childcare responsibilities and sleep patterns, and because he found his work area uncomfortable. (*Id*. 100:20-103:9).  Plaintiff explained that during the bidding process he could obtain a more convenient shift as a driver because he had the lowest seniority of the bulk mail assistants, but would have, from his USPS driving experience, "a lot of seniority" as a driver. (*See id*. 97:23-98:14).

    Second, even if plaintiff could establish that defendant's failure to reassign plaintiff in 2002 constitutes an adverse employment action, plaintiff has not identified any similarly

situated employee outside of his protected class who was treated more favorably. A "similarly situated" employee is one whose job is similar to the plaintiff's "in all material respects," and who displayed conduct similar to the plaintiff's. *Moran v. Selig*, 447 F.3d 748, 756-57 (9th Cir. 2006); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004). The plaintiff's and his comparators' circumstances must have been nearly identical for his comparators to qualify as "similarly situated." *Moran*, 447 F.3d at 756.

Plaintiff asserts that three African-American employees – Danny Clark, Norman Davis, and Debbie Nails – and one Filipino-American employee, "Valafor," received reassignment from bulk mail assistant or dispatch clerk positions back to driving positions. (*Id.* 106:7-21, 107:18-108:1). None of plaintiff's comparators were similarly situated in "all material respects." Neither Nails nor Valafor were similarly situated to plaintiff because, after switching to clerk positions, both requested reassignment back to driving positions within 90 days. (*Id.* 106:07-108:05). Pursuant to Article 39.1.b.5.c of the Agreement, employees voluntarily reassigned from one position to another may return to their former position within 90 days. (*See* Inouye Decl. Ex. 12). Plaintiff first requested reassignment three years after leaving his driving position in 1999. Both Clark and Davis received reassignment as part of settlement of a grievance. (*Id.*). Plaintiff has provided no evidence of the circumstances surrounding the grievances. Plaintiff has not filed a grievance related to his 2002 reassignment request. (Tam Dep. 123:16-19). Moreover, plaintiff's manager, Inouye, did not approve Clark's and Davis' reassignments. (Inouye Decl. ¶ 12). *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (to be "similarly situated," employees must have dealt with same supervisor). Both Clark and Davis received their reassignments years prior to plaintiff's 2002 requests. Clark received reassignment in 1999, and Davis in the 1990s. (Inouye Decl. ¶ 12). Plaintiff offers no evidence that the number of vacancies at the time of Clark's or Davis' reassignment would be similar to those available in 2002. *See Fahim v. Marriott Hotels Servs., Inc.*, 2008 WL 1821513, at *5-6 (S.D. Tex. Apr. 22, 2008) (plaintiff's comparators – Asian men who presented same airline vouchers for hotel room and received accommodation from the defendant – not similarly situated because they made their requests earlier than plaintiff).

Even if plaintiff had set forth a prima facie case of discrimination, he cannot rebut defendant's legitimate, non-discriminatory reasons for failing to reassign plaintiff in 2002. Plaintiff did not receive his requested reassignment to a full-time TTO position in 2002 because no vacancies were available.  (Inouye Decl. ¶ 9); *see Kortan*, 5 F. Supp.2d at 854 (lack of vacancy is legitimate reason to deny transfer).  Pursuant to the Agreement, defendant gives first priority for available full-time TTO positions to current drivers, *i.e.*, TTOs and part-time flexible MVOs. At the time of his request, plaintiff worked as a bulk mail assistant, not as a driver. (Inouye Decl. ¶ 9, Ex. A).

### 4.  Refusal to Change Work Schedule

Plaintiff cannot establish a prima facie case of discrimination based on defendant's refusal to change his work schedule in February 2005.  Defendant's refusal does not constitute an adverse employment action.  As the bulk mail assistant with the lowest seniority, since 1999 plaintiff had received the relief position during bidding.  (Tam Dep. 97:20-98:17).  Plaintiff cannot show that obtaining the same bid constitutes a material adverse change in the terms and conditions of his employment.  Also, plaintiff cannot identify any similarly situated individual outside of his protected classes who received a requested work schedule change outside the annual bidding process. (*Id*. 97:20-98:14, 171:7-22).

Plaintiff cannot rebut defendant's legitimate, non-discriminatory reason for failing to change plaintiff's schedule in February 2005, after completion of annual bidding. Each year, plaintiff's managers developed a schedule of bulk mail positions that would efficiently and effectively carry out the operational needs of Transportation.  (Chadha Decl. ¶ 3).   Plaintiff admits that once bidding is completed, his managers "cannot change [the schedule].  If they change it, they got to ruin the whole bid, because every-year process."  (Tam Dep. 100:3–8).  In other words, changing one bid (*i.e.,* position) would affect the other bids, and thus, upset the entire bulk mail assistant schedule and the operational goals for which it was developed.[6]

---

[6]  That defendant agreed, as part of an October 2003 EEO settlement, to a limited change of plaintiff's  2003 schedule does not show the feasibility of redesign of the entire relief position schedule after annual bidding.  Defendant agreed to the 2003 change because even with the change, Transportation would continue to have additional help during its peak hours.  (Wang

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 5.  Denial of Annual Leave from February 9-11, 2005

Plaintiff's discrimination claim based on defendant's denial of his January 27, 2005 request to take annual leave from February 9-11, 2005 fails.  Here, plaintiff not only provided less than two-weeks' notice, but also requested leave on those days in which he was the only bulk mail assistant scheduled to work his shifts.  Plaintiff has not identified another employee outside of plaintiff's class who was treated more favorably under similar circumstances.

Moreover, plaintiff cannot rebut defendant's legitimate, non-discriminatory reason for denying plaintiff's request for annual leave from February 9-11, 2005:  plaintiff did not provide sufficient advance notice, and his absence would have resulted in insufficient coverage of plaintiff's shift. (Chadha Decl. ¶ 6).   To allow time for supervisors and managers to ensure proper work coverage and schedule for employee absences, Transportation required a minimum of two-weeks notice for requests for annual leave, except in emergencies. (*Id*.).   Plaintiff failed to provide adequate notice.  (Tam Dep. 171:23-172:14).  Also, plaintiff was the only bulk mail assistant scheduled for his February 9-11, 2005 shifts.  Although, another bulk mail assistant, Staten, was scheduled for those shifts, he had already asked to take leave from February 5-11, 2005.  (Chadha ¶ 6).

### 6.  Failure to Call Plaintiff to Work Overtime on February 12, 2005

Plaintiff cannot establish a prima facie case of discrimination based on defendant's decision not to call plaintiff in to work overtime on February 12, 2005, plaintiff's scheduled day off.  Denial of overtime opportunities is not an adverse employment action under Title VII. *Garity v. Potter*, 2008 WL 872992, at * 3 (D. Nev. Mar. 27, 2008).  Plaintiff is not entitled to work overtime hours.  (*See* Chadha Decl. ¶ 7).  Accordingly, plaintiff has not alleged any action that affected plaintiff's the terms, conditions, or privileges of his employment.  Moreover, plaintiff testified that he knows of no similarly situated employee who was treated more favorably, *i.e.* was called in on a scheduled day off to work overtime on February 12, 2005.  (Tam Dep. 186:12-15, 187:15-188:2, 188:11-23).

Decl. Ex. B (Excerpts of 2/6/08 Dep. Tr. of Balvinder Chadha) 24:14-18).

Even if plaintiff could establish a prima facie case of discrimination, defendant has legitimate, non-retaliatory reasons for not calling plaintiff for overtime on February 12, 2005. The USPS does not require supervisors to call in employees to report to work overtime on their scheduled days off. (Chadha Decl. ¶ 7). Also, Chadha determined that sufficient coverage for the absence of a scheduled bulk mail assistant could be provided by calling in another bulk mail assistant scheduled to work on February 12, 2005, to begin his shift four hours early. (*Id*.). Chadha determined that he did not need an assistant to come in for eight hours of work. This decision reflected a business judgment to reduce costs by incurring only four, rather than eight hours of overtime costs. (*Id*.).

### 7.  Alleged Intimidation on September 23, 2004

Plaintiff alleges that Inouye discriminated against plaintiff by approaching him on September 23, 2004 and "intimidated him by telling him he fights against the system" and by "telling [plaintiff] to file a complaint or lawsuit." Verbal threats and reprimands do not constitute adverse employment actions because of their lack of consequence; they do not affect the terms of conditions of the plaintiff's employment. *See Helgeson v. Am. Int'l Group, Inc.*, 44 F. Supp. 2d 1091, 1098 (S.D. Cal. 1999).

### E.  Plaintiff's Retaliation Claim Fails

Summary judgment for defendant on plaintiff's retaliation claim is appropriate because he cannot rebut defendant's legitimate, non-retaliatory reasons for restructuring the 2005 bulk mail assistant schedule. (*See* Tam Dep. 202:3-22). As with discrimination claims under Title VII, if a prima facie case is established, the burden then shifts to the employer to offer a legitimate explanation. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004). Plaintiff bears the ultimate burden of demonstrating that the proffered reason is pretextual. *Hardage v. CBS Broadcasting Inc.*, 427 F.3d 1177, 1188 (9th Cir. 2005).

Defendant restructured the 2005 bulk mail assistant schedule to create more overlap in the reporting hours for the three tours, with the intention of reducing the need to require an assistant to work over his or her scheduled hours, and thus, reduce overtime costs. (Chadha Decl. ¶ 5, Ex. A). As part of the restructuring, the reporting time and days for *all* of the bulk mail assistant positions were changed, not just that of the relief assistant. (*Id.*). Plaintiff has

produced no evidence that such reason is pretextual, much less evidence that is "specific and substantial."   Having no specific and substantial evidence of discriminatory intent, plaintiff cannot establish a Title VII retaliation claim.

### D.  Plaintiff Cannot Establish a Hostile Work Environment/Harassment Claim

To state a prima facie case of hostile work environment harassment, plaintiff must raise a triable issue of fact as to whether:  (1) he was subjected to verbal or physical conduct because of an impermissible criterion (here, race or national origin); (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive as to alter the terms or conditions of employment, thereby creating an abusive work environment.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993).  Here, plaintiff cannot not establish that his supervisors' alleged conduct was sufficiently severe as to alter the conditions of his employment and create an abusive working environment, or that it was directed at him because of his race or national origin.

### 1.  Alleged Conduct was Not Severe or Pervasive

Plaintiff's allegations of harassing conduct by his supervisors and managers do not suffice to establish an abusive working environment.  "A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed."  *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).  The working environment must be both subjectively and objectively perceived as abusive.  *See id*.  Whether the workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics as plaintiff and must be based on the totality of the circumstances.  *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991).  These circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.   Title VII is not a "general civility code," and "ordinary tribulations in the workplace, such as the sporadic use of abusive language, [protected class]-related jokes, and occasional teasing" do not constitute harassment.  *Farragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Courts have found offensive, even crude unwelcome actions, insufficient, as a matter of law to establish severe or pervasive conduct. *See Manatt v. Bank of Am.*, 339 F.3d 792, 798-99 (9th Cir. 2003) (co-workers' jokes about "China men" in the presence of plaintiff, ridicule of plaintiff's mispronunciation of Lima, and act of pulling their eyes back with their fingers to mock the appearance of Asians not sufficiently severe or pervasive enough to constitute a hostile work environment)*; Vasquez*, 349 F.3d at 643 (no hostile work environment where continual false complaints made against plaintiff, plaintiff was yelled at in front of others and told that the had a "typical Hispanic macho attitude" and that he should work in the field because "Hispanics do good in the field"); *Smith v. County of Humboldt*, 240 F. Supp. 2d 1109, 1113, 1118 (N.D. Cal. 2003) (claims co-worker pushed her head, brushed against her in the bathroom, hit her cheekbone and shoulder, tried to sit next to her, and touched her over 10 day period not "severe or pervasive").

Here the alleged harassment does not rise to a hostile work environment as a matter of law. Plaintiff bases his harassment claim on the following seven alleged events that took place over a span of three years, from 2004 to 2007 (*See* Tam Dep. 203:5-204:23): (1) Plaintiff's supervisor Benavides, disallowed 1.5 hours of overtime that he had worked on June 26, 2004. Although initially deleted, the overtime was subsequently restored. (Chadha Decl. ¶ 9; Tam Dep. 133:7-11). Benavides disallowed the overtime after failing to obtain verification that plaintiff's June 26, 2004 supervisor had authorized the overtime. (Wang Decl. Ex. C (Excerpts of Tr. of 2/20/08 Dep. of Gloria Benavides ) 8:1-24); (2) Plaintiff contends that in 2005, Nails tried to discipline him and called him a "Chinaman." However, plaintiff acknowledges that Nails sought to discipline him because he used profanity towards her. (Tam Dep. 144:20-145:10). Plaintiff explained that Nails mostly used the phrase "Chinaman" when she and plaintiff played dominos at work. (*Id.* 146:2-15, 147:2-4); (3) Plaintiff contends that in 2005, Nails looked for plaintiff in the break area. Plaintiff also contends that his supervisor, "Mr. Scott" also looked for him. (*Id.* 134:14-136:16). However, plaintiff admits that he was on duty and away from his work area during these occasions. (*Id.* 140:10-24); (4) According to plaintiff, Melvin Morris, the employee who posts a schedule showing vacation and overtime for

the coming week, stopped posting the schedule in the traffic control office after plaintiff told Morris he made a mistake on one of the schedules.  (*Id*. 178:179:4, 203:5-13).   The schedule is still posted at a different location, and plaintiff admits that its removal from the traffic control office has little impact on him.(*Id*. 205:20-206:4, 206:23-25); (5) Plaintiff complains that in 2007, his supervisor, Lucius Paulk, asked him to pick up mail from a post office outside his route.  Plaintiff admits that Paulk's request did not require him to do anything outside his normal duties.  (*Id*. 209:7-18); (6) Plaintiff asserts that in 2007, his supervisor, James Duffy, suggested that he take leave after learning he was on medication. (*Id*. 210:8-212:1).

None of the incidents plaintiff complains of amount to an objectively hostile work environment:  plaintiff does not complain of any profanity; crude behavior, or conduct causing him any humiliation.  Even if true, the isolated incidents, occurring across a three year span, plaintiff alleges do not rise to the level of unlawful harassment.  Occasional or isolated incidents are not actionable; a plaintiff must show a concerted pattern of harassment of a repeated, routine or generalized nature.  *See Farragher*, 524 U.S. at 788 (continuous violations "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.").  Without evidence of severe or pervasive conduct that is both subjectively and objective abusive, plaintiff cannot maintain a harassment claim.

### 2.  Alleged Conduct Not Because of Plaintiff's Race or National Origin

Plaintiff cannot establish that he endured a hostile work environment *because* of his race or national origin.  *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998).  Simply being a member of a protected class and being treated unfairly is not enough.  "The critical issue . . . is whether members of one [protected class] are exposed to disadvantageous terms of conditions of employment to which members [outside the class] are not exposed." *Oncale*, 523 U.S. at 80.  Title VII provides redress only against employers who are proven to have taken adverse employment action *by reason of* membership in a protected class.  *See Hicks*, 509 U.S. at 523-24 ("although [the plaintiff] has proven the existence of a crusade to terminate him, he has not proven that the crusade was racially rather than personally motivated.").  To meet his burden to defeat summary judgment, plaintiff must offer "more than speculation and conjecture

to make the required connection from the mistreatment she alleges to gender or race-based animus." *Palesch v. Missouri Comm'n on Human Rights*, 233 F.3d 560, 567-68 (8th Cir. 2000).

Nothing in the alleged conduct of plaintiff's supervisors suggests that they occurred because of his race or national origin. Plaintiff has no basis other than speculation for his contention that his supervisors' alleged conduct was due to his race or national origin. Plaintiff admits that: (1) Other than the June 26, 2004 overtime issue, plaintiff has never had any other conflicts or problems with Benavides, and Benavides has never said anything to plaintiff about his race. (Tam Dep. 132:17-25); (2) The only basis for his belief that Nails and Scott looked for him because of his race is the fact that "They are African-American."(*Id*. 141:4-12); (3) Although Nails has referred to plaintiff as "Chinaman," she used this phrase in the context of domino games with plaintiff at work. (*Id*. 146:2-15, 147:2-4); (4) Plaintiff and Morris do not interact, Morris has never said anything to plaintiff about his race, and plaintiff does not know why Morris removed the weekly schedule. (*Id*. 183:11-19, 184:4-6, 213:9-19); (5) Plaintiff does not believe that either Paulk's or Duffy's allegedly harassing conduct towards him was motived by his race. (*Id*. 212:7-213:5). Plaintiff cannot show that his supervisors' alleged conduct was based on his race or national origin, thus, his harassment claim fails.

### E.  Plaintiff Cannot Bring Claim for Violations of the Agreement

Plaintiff cannot assert a claim for violation of the Agreement between the APWU and USPS. Federal courts have jurisdiction over actions brought for violation of contracts between the USPS and a labor organization representing USPS employees. 39 U.S.C. § 1208(b). A USPS employee subject to a collective bargaining agreement containing a binding procedure for resolving grievances cannot maintain a cause of action unless the union failed to provide him fair representation. *See Bowen v. United States Postal Serv.*, 459 U.S. 212, 220-22 (1983); *Johnson v. United States Postal Serv.*, 756 F.2d 1461, 1467 (9th Cir. 1985).

The Agreement provides for a binding grievance and arbitration procedure. (Wang Decl. Ex. H at Art. 15.5.A.6). That procedure is plaintiff's exclusive remedy for any claimed

1
2
3
4
5
6

violation. *Truex v. Garrett Freigthlines*, 784 F.2d 1347, 1353 (9th Cir. 1985). Even if plaintiff's claim could be construed as a one for inadequate representation, he can provide no evidence for that claim because he did not file grievances for the violations he now alleges.  (Tam Dep. 222:17-223:17). *See Stupy v. United States Postal Serv.*, 951 F.2d 1079, 1082 (9th Cir. 1991) ("To establish that the union breached its duty of fair representation, the employee must *attempt* use of the contract grievance procedure."). Plaintiff's breach claim should be dismissed.

7

### F.  Plaintiff Cannot Obtain Punitive Damages from Defendant

8
9
10

Plaintiff cannot obtain punitive damages. As head of a government agency, defendant is immune from liability for punitive damages under Title VII.  42 U.S.C. § 1981a(b)(1); *Baker v. Runyon*, 114 F. 3d 668, 671-72 (7th Cir. 1997).

11

## V.  CONCLUSION

12
13

For the reasons stated above, defendant respectfully requests that the Court grant summary judgment in his favor.

14

Respectfully submitted,

15
16

JOSEPH P. RUSSONIELLO
United States Attorney

17

Dated: May 23, 2008

_____
       /s/

18

JENNIFER S WANG
Assistant United States Attorney

19
20
21
22
23
24
25
26
27
28