JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
JENNIFER S WANG (CSBN 233155)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6967
Facsimile: (415) 436-6748
jennifer.s.wang@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFFREY W. TAM,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN E. POTTER,<br><br>    Defendant. | No. 07-2747 SI<br><br>**DECLARATION OF KEITH INOUYE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

I, Keith Inouye, declare as follows:

1. I am over 18 years of age, am a resident of the State of California, and make this declaration in support of defendant's motion for summary judgment. The statements contained in this declaration are within my personal knowledge.

2. Currently, I am employed by the United States Postal Service ("Postal Service") as the Manager of Transportation and Networks ("Transportation") at the Postal Service's Processing & Distribution Center ("P&DC") in Oakland, California ("Oakland P&DC"). I have held this position since approximately 1997. As the Manager of Transportation, I am responsible for postal vehicle operations and all matters related to the transportation of mail.

3. Within the Transportation, bargaining unit (or union) employees annually "bid" for available positions. The Postal Service's Personnel Office administers the annual bidding process.

4. Generally, employees work one of three "tours" or shifts. Every year, prior to the annual bidding process, the Manager of Postal Vehicle Service Operations ("PVS" also known as the Motor Vehicle Craft Unit) and his staff determine what driver and bulk mail assistant positions (also known as "bids"), or tour assignments, will be necessary to efficiently and effectively carry out the operations of Transportation. To ensure that our mail delivery commitments are met, the schedule of positions is developed with the input of the Postal Service's Mail Processing unit and the Postmasters of the post offices within the Oakland service area. Before the positions are submitted to Personnel for the annual bidding process, I review the positions developed. Prior to annual bidding, a work schedule that includes the reporting times and days for each of the three tours and the number of employees necessary for each of those tours is created. In developing the positions for the coming year, the USPS seeks to ensure that the primary goal of Transportation – the timely pick-up and delivery of mail – is met. Accordingly, the schedule and positions created reflect business judgments regarding how to best ensure sufficient coverage for all tours and to minimize the need to incur overtime costs. Positions are not tailored for any individual employee. We do not consider which individual employee is likely to obtain a particular position in developing the positions that will be offered during the annual bidding process. Priority in the bidding process is based on seniority.

5. PVS includes drivers of Postal Service trucks, including motor vehicle operators ("MVO") and tractor trailer operators ("TTO"), bulk mail assistants and other clerks. Part-time flexible MVO work varying hours, depending on the operational needs of the unit and are not guaranteed to receive 40 hours of work per week. They do not work fixed "tours," or shifts, nor do they consistently drive the same routes. In contrast, full-time drivers (MVOs and TTOs) work a consistent tour, which they select during the Postal Service's annual bidding process.

Bulk mail assistants are primarily responsible for documenting and monitoring movement of postal trucks from station to station and responding to calls from drivers.

6. In 1999, 2000, 2001, 2002, and 2003, Transportation had various job vacancies for transportation supervisors at the Oakland P&DC. As Manager of Transportation, I selected the individuals who filled these vacancies. In 1999, 2000, 2001, 2002, and 2003, I used a Review Board (or "Board") to aid me in the selection process. The members of the Board differed each year. However, each year, the Board consisted of three members selected from a list provided to me by the Postal Service's Personnel Department. This list included names of individuals who had received appropriate training for service on Review Boards. The Board members I used in 1999, 2000, 2001, 2002, and 2003 included employees from outside the Oakland P&DC, and generally consisted of a manager from Mail Processing, a Manager of Transportation from another district, and a Postmaster or manager of a post office serviced by the PVS.

7. In 1999, 2000, 2001, 2002, and 2003, I used a Board to conduct a first round review of applications for the transportation supervisor vacancies. In conducting this first round review, the Board reviewed the application materials provided by the candidates. Frequently, the Board also conducted screening interviews for me as part of its review process. The Board screened out those applicants without the minimum qualifications for the position. The Board then submitted names of the best qualified applicants to me. I interviewed candidates whose names were submitted to me by the Board and made my selection from those interviewed. Accordingly, to be selected for a final interview with me, candidates had to pass Board review. I asked the candidates I interviewed the same set of questions. These questions were designed to help me evaluate whether candidates understood the responsibilities and duties of a transportation supervisor. For example, I created hypothetical situations typically encountered by transportation supervisors and asked candidates how they would act in those situations. I also questioned candidates on Transportation Networks and Postal Service policies and procedures. My hiring decisions in 1999, 2000, 2001, 2002 and 2003, were based solely on the

candidates' qualifications and the answers provided during the candidates' interviews with me, and not based on any candidate's age, race, national origin, or any prior EEO activity.

8. Plaintiff, Jeffrey Tam, only passed the Board's review once, in 2003. After the Board submitted his name to me, I interviewed Mr. Tam. However, during his interview, Mr. Tam failed to fully respond to each of the questions I asked. Based on his qualifications and the answers he provided during the interview, I did not believe Mr. Tam to be the best qualified applicant. In 2003, I selected Henry Orozco, a TTO, for the transportation supervisor position.

9. Around or about May 2002, I received a written request from Mr. Tam for reassignment to a driving position as a full-time TTO. At that time, Mr. Tam did not express interest in a part-time MVO position. Mr. Tam did not receive a reassignment in 2002 solely because no vacancies were available. I have never denied a request for reassignment on the basis of an employee's age, race, national origin, or EEO activity. Consistent with the Agreement between the Postal Service and the American Postal Workers Union, AFL-CIO, ("the Agreement") first priority for available full-time TTO positions is given to current drivers, *i.e.*, TTOs and part-time flexible MVOs. A true and correct copy of Article 39.1.B.7 of the Agreement is attached as Exhibit A.

10. Around February 2005, Mr. Tam submitted a written request for reassignment to a driving position as a part-time MVO to me. However, around October 15, 2003, the Postal Service had instituted a new website – eReassign – to process requests for voluntary reassignments. The eReassign website is maintained by the Postal Service's Human Resources Department. Accordingly, Mr. Tam was informed that, consistent with the Postal Service's new policy, he had to apply for his reassignment via the eReassign website.

11. Around September 2005, pursuant to his request, plaintiff was reassigned to a driving position as a part-time flexible MVO. In March 2006, plaintiff became a full-time TTO, and currently works in that position.

12. I was not involved in any decision to reassign Debbie Nails, Norman Davis, or Danny Clark from a bulk mail assistant or other clerk position to a full-time driving position.

INOUYE DECL. ISO DEF.'S MOT. FOR SUMMARY JUDGMENT
C07-2747 SI                         4

1  Pursuant to Article 39.1.B.5.c of the Agreement, employees voluntarily reassigned from one
2  position to another may return to their former position within 90 days.  A true and correct copy
3  of Article 39.1.B.5.c of the Agreement is attached as Exhibit B.  Review of Mr. Davis' file
4  shows that he received reassignment from a bulk mail assistant position to a full-time TTO
5  position as part of a settlement of a union grievance around 1999.  Similarly, review of Mr.
6  Clark's file shows that he received reassignment from a dispatch clerk position to a full-time
7  TTO position as a result of settlement of a union grievance in the 1990s.

      13.  I have never attempted to intimidate Mr. Tam in order to prevent him from filing an EEO complaint or lawsuit.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed on May 23, 2008 at Oakland, California.

_____/s/_____
Keith Inouye

INOUYE DECL. ISO DEF.'S MOT. FOR SUMMARY JUDGMENT
C07-2747 SI                                      5