JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
JENNIFER S WANG (CSBN 233155)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-6967
   Facsimile: (415) 436-6748
   jennifer.s.wang@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFFREY W. TAM, ) <br> ) <br>     Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> JOHN E. POTTER, ) <br> ) <br>     Defendant. ) <br> ) | No. 07-2747 SI <br><br> **DECLARATION OF BALVINDER CHADHA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

I, Balvinder Chadha, declare as follows:

    1. I am over 18 years of age, am a resident of the State of California, and make this declaration in support of defendant's motion for summary judgment. The statements contained in this declaration are within my personal knowledge.

    2. Currently, I am the Manager of Postal Vehicle Service ("PVS") Operations (also known as Motor Vehicle Craft Unit) for the United States Postal Service ("Postal Service") Processing & Distribution Center ("P&DC") in Oakland, California ("Oakland P&DC"). I was permanently assigned to my position as Manager of PVS in 2004. In 2002 and 2003, I served as the Acting Manager of PVS. The PVS Operations is part of a the Transportation Networks Division ("Transportation") at the Oakland P&DC, and I report to Keith Inouye, Manager of

Transportation at the Oakland P&DC.  I am responsible for oversight of all postal vehicle operations and supervise drivers and bulk mail assistants at the Oakland P&DC.

3. Bulk mail assistants annually "bid" for available positions.  The Postal Service's Personnel Office administers the annual bidding process.  I am primarily responsible for creating the work schedule for bulk mail assistants at the Oakland P&DC.  Generally, bulk mail assistants work one of three "tours" or shifts. Every year, prior to the annual bidding process, I work with my staff, the Mail Processing unit and the Postmasters and managers of post offices in the Oakland service area to determine what bulk mail assistant positions (also known as "bids"), will be necessary to efficiently and effectively carry out the operations of Transportation.   As part of this process, I determine the reporting times and days for the bulk mail positions that will be offered during annual bidding.  I create a schedule of bulk mail assistant positions based on the operational needs of Transportation.  The primarily goal of Transportation is the timely pick-up and delivery of mail.  Accordingly, the bulk mail assistant schedule and positions reflect business judgments regarding how to best ensure sufficient coverage for all tours and to minimize the need to incur overtime costs.  Positions are not tailored for any individual assistant.  In developing the positions that will be offered during the annual bidding process, I do not consider which individual assistant is likely to obtain a particular position.  Before the positions are submitted to Personnel for annual bidding, Mr. Inouye reviews the positions and schedules creates.  Once the positions have been determined, employees then bid for the available positions for the coming year.  Priority in the bidding process is based on seniority.

4. Most bulk mail assistant positions cover one tour.  To meet the operational needs of Transportation, the bulk mail assistant schedule must include a relief position.  The bulk mail assistant with this position relieves assistants on the other three tours – e.g., allows for full coverage of a particular tour during another assistant's scheduled day off –  and thus, has varying start times during the week, and at times, non-consecutive days off.  During my tenure as a the Manager of PVS, plaintiff, Jeffrey Tam, had the least seniority of all the bulk mail

CHADHA DECL. ISO DEF.'S MOT. FOR SUMMARY JUDGMENT
C07-2747 SI                                      2

assistants. Accordingly, Mr. Tam took whatever bid remained after the other bulk mail assistants made their selections and received the last vacant position – the relief bulk mail assistant position. A true and correct copy of the schedules for bulk mail assistants from 1999 to 2005 is attached as Exhibit A.

5. From 1999 to 2002, the bulk mail assistant positions and schedule remained unchanged. In December 2002, the reporting times and days for the bulk mail assistant positions for 2003 were restructured to allow for additional coverage during the Postal Service's busiest times, from 4:00 a.m. to 1:00 p.m. from Monday through Wednesday. In December 2004, the reporting time and days for bulk mail assistant positions for 2005 were restructured to create more overlap in the reporting times of the three tours. All of the positions were restructured in order to reduce the need to require an assistant to work over his or her scheduled hours, and thus, minimize overtime costs. I have never based my decision to restructure the bulk mail assistant positions on Mr. Tam's age, race, national origin, or EEO activity.

6. In July 2004, I had informed all supervisors and bulk mail assistants that management must receive minimum of two weeks notice to review a request for annual leave, except in unforeseen circumstances. A true and correct copy of the July 2004 notice is attached as Exhibit B. Around January 27, 2005, I learned from Mr. Tam's acting supervisor, Debbie Nails, that Mr. Tam had asked to take annual leave from February 9-11, 2005. I informed Ms. Nails that the request could not be approved because Mr. Tam was the only bulk mail assistant scheduled to work his tour on February 9-11, 2005. The other clerk scheduled for the same tour on February 9-11, 2005, Woodrow Staten, had already requested annual leave.

7. On February 12, 2005, Mr. Staten, who had been on annual leave from February 5-11, 2005, was scheduled to work, but called in on February 12, 2005 to request an additional day of leave because flight delays prevented his timely return from vacation. Mr. Tam was not scheduled to work on February 12, 2005. I determined that Mr. Staten's absence could be sufficiently filled by calling in a clerk, who was already scheduled to come in to work on

CHADHA DECL. ISO DEF.'S MOT. FOR SUMMARY JUDGMENT
C07-2747 SI                                  3

1  February 12, 2005, to begin his shift four hours earlier.  Accordingly, I determined that it would
2  not be necessary to call Mr. Tam in from home to work Mr. Staten's full eight hour shift.  This
3  decision reflected a business decision to reduce costs by incurring only four, rather than eight
4  hours of overtime costs.   I have never refused to allow Mr. Tam to work overtime on the basis
5  of his age, race, national origin, or EEO activity.  The Postal Service does not require
6  supervisors to call in employees to report to work overtime on their scheduled days off.
7  Around July 25, 2003, I emailed all transportation supervisors a clarification of the Postal
8  Service's overtime policy. A true and correct copy of my July 2003 email is attached as Exhibit
9  C.

   8. Around February 2005, Mr. Tam submitted a request for reassignment to a driving position as a part-time flexible MVO to me.  Around October 15, 2003, the Postal Service had instituted a new website – eReassign – to process requests for voluntary reassignments.  A true and correct copy of the notice regarding the eReassign website is attached as Exhibit D.  Mr. Tam was informed that, consistent with the Postal Service's new policy, he had to apply for his reassignment via the eReassign website.   Mr. Tam received reassignment to a part-time flexible MVO position around September 17, 2005.  In  Mach 2006, Mr. Tam obtained a position as a full-time TTO, and currently works in that position.

   9. I learned from transportation supervisor Gloria Benavides that Mr. Tam, without authorization, began his shift 1.5 hours early to work overtime on or around June 26, 2005.  Although Ms. Benavides had disallowed Mr. Tam's overtime, I instructed her to pay Mr. Tam for the overtime hours. I have never disallowed any overtime earned by Mr. Tam based on his age, race, national origin, or EEO activity.

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

   Executed on May 23, 2008 at Oakland, California.

                                          /s/
                                          Balvinder Chadha

CHADHA DECL. ISO DEF.'S MOT. FOR SUMMARY JUDGMENT
C07-2747 SI                                  4