JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
JENNIFER S WANG (CSBN 233155)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6967
Facsimile: (415) 436-6748
jennifer.s.wang@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFFREY W. TAM, <br><br> Plaintiff, <br><br> v. <br><br> JOHN E. POTTER, Postmaster General, <br><br> Defendant. | No. 07-2747 SI <br><br> **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Date: June 27, 2008 <br> Time: 9:00 a.m. <br> Place: Courtroom 10, 19th Fl. |

# TABLE OF CONTENTS

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
                                                                                                           2
     A.  Plaintiff's Claim of Failure to Promote Fails.. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

         1.  Plaintiff's Claim Is Untimely. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
         2.  Plaintiff Cannot Rebut Defendant's Legitimate Reasons for His Actions
             as Pretextual.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.  Plaintiff's Discrimination Claim Based on Delayed Reassignment to Driving
         Position Fails. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

         1.  2002 Request.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

         2.  2005 Request.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     C.  Plaintiff's Claim of Discrimination Based on Failure to Change His 2005 Work
         Schedule Fails. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     D.  Plaintiff's Discrimination Claim Based on Denial of Annual Leave Fails. . . . . . . 9

     E.  Plaintiff's Claim of Discrimination Based on Failure to Call Plaintiff to Work
         Overtime on February 12, 2005 Fails. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     F.  Plaintiff's Claim of Discrimination Based on Alleged Intimidating Comments
         by Fails . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     G.  Plaintiff's Retaliation Claim Fails. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     H.  Plaintiff Cannot Establish a Hostile Work Environment/Harassment Claim . . . . 14

     I.  Plaintiff Cannot Bring Claim for Violations of the Agreement.. . . . . . . . . . . . . . 14

II.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

Aragon v. Republic Silver State Disposal, Inc.,
    292 F.3d 654 (9th Cir. 2002)........................................................ 3

Bowen v. United States Postal Serv.,
    459 U.S. 212 (1983)................................................................ 15

Chuang v. University of Cal. Davis, Board of Trustees,
    225 F.3d 1115 (9th Cir.2000)........................................................ 6

Farragher,
    524 U.S. at 788.................................................................. 14

Gilmour v. Gates, McDonald & Co.,
    382 F.3d 1312 (11th Cir. 2004)...................................................... 9

Harris v. Forklift System, Inc.,
    510 U.S. 17 (1993)................................................................ 14

Helgeson v. America International Group, Inc.,
    44 F. Supp. 2d 1091 (S.D. Cal. 1999)................................................ 12

Johnson v. United States Postal Serv.,
    756 F.2d 1461 (9th Cir. 1985)...................................................... 15

Keenan v. Allen,
    91 F.3d 1275 (9th Cir. 1996)........................................................ 2

Kirby v. Dole,
    736 F.2d 661 (11th Cir. 1984)....................................................... 9

Kortan v. State of California,
    5 F. Supp. 2d 843 (9th Cir. 1998)............................................. 6, 7, 8

Leong v. Potter,
    347 F.3d 1117 (9th Cir. 2003)....................................................... 3

McGowan v. City of Eufala,
    472 F.3d 736 (10th Cir. 2006)....................................................... 6

Moran v. Selig,
    447 F.3d 748 (9th Cir. 2006)..................................................... 6, 7

National Railroad Passenger Corp. v. Morgan,
    536 U.S. 101 (2002)................................................................ 2

Palesch v. Missouri Commission on Human Rights,
    233 F.3d 560 (8th Cir. 2000).................................................. 14, 15

Pottenger v. Potlatch Corp.,
    329 F.3d 740 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Sherman v. Standard Rate Data Serv., Inc.,
    709 F. Supp. 1433 (N.D. Ill. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Stupy v. United States Postal Serv.,
    951 F.2d 1079 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Truex v. Garrett Freigthlines,
    784 F.2d 1347 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Vasquez v. County of Los Angeles,
    349 F.3d 634 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Villiarimo v. Aloha Island Air, Inc.,
    281 F.3d 1054 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 13

**DOCKETED CASES**

Dolan v. United States,
    No. 05-3062-CL, 2008 WL 362556 (D. Or. Feb. 8, 2002). . . . . . . . . . . . . . . . . . . . . . 9

Garity v. Potter,
    2008 WL 872992 (D. Nev. Mar. 27, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Ford v. Sheriff-Coroner's Department of Contra Costa Cty,
    1998 WL 898468 (N.D. Cal. Dec. 21, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**FEDERAL STATUTES**

29 C.F.R. §1614.105(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 56(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## I. INTRODUCTION

Plaintiff alleges four claims: (1) discrimination; (2) hostile work environment; (3) retaliation; and (4) breach of the collective bargaining agreement ("Agreement") between the American Postal Worker's Union, AFL-CIO ("APWU") and the United States Postal Service ("USPS").[1] Defendant has shown that plaintiff's hostile work environment claim, and, to the extent it is based on failure to receive a promotion, plaintiff's discrimination claim are barred because plaintiff failed to timely exhaust his administrative remedies.

Moreover, plaintiffs' discrimination, hostile work environment and retaliation claims fail on the merits. Plaintiff bases his discrimination claim on the following: defendant's failure to promote him to supervisor of transportation, delay in reassigning plaintiff to a driving position, refusal to change plaintiff's work schedule in 2005, denial of his request for annual leave from February 9-11, 2005, failure to call plaintiff to work overtime on February 12, 2005, and alleged attempt to verbally intimidate plaintiff. Plaintiff has failed to rebut defendant's legitimate, non-discriminatory reasons for failing to promote him: he was not the best qualified applicant. Plaintiff has also failed to rebut defendant's legitimate, non-discriminatory reasons for denying his leave request: plaintiff failed to provide adequate notice and no one was available to cover plaintiff's shift. Plaintiff has failed to establish that delay in reassigning plaintiff, refusal to change plaintiff's work schedule, failure to call plaintiff to work overtime on February 12, 0025, and alleged attempt to intimidate plaintiff constitute adverse employment

---

[1] Defendant timely filed his motion for summary judgment on May 23, 2008. Pursuant to the Court's September 10, 2007 Pretrial Preparation Order, plaintiff's Opposition to defendant's motion was due on June 6, 2008. Plaintiff did not serve his Opposition on defendant's counsel on June 12, 2008, one day before defendant's deadline for filing his Reply. Plaintiff does not yet appear to have filed his opposition brief with the Court. *See Howell v. Swedish Medical* Center, No. C04-1329RSM, 2005 WL 2455020, at *1 (W.D. Wash. Oct. 4, 2005) (holding that because the plaintiff's late-filed declaration with attached exhibits were never actually filed, they could not be considered by the Court in ruling on the defendant's summary judgment motion). Accordingly, defendant respectfully requests that the Court strike plaintiff's Opposition. With its Reply, defendant has concurrently filed a motion requesting permission to file additional pleadings in reply to plaintiff's Opposition by June 20, 2008.

actions, and has failed to show that any similarly situated employees were treated more favorably than plaintiff.

Defendant has shown that the harassing conduct plaintiff complains of does not, as a matter of law, suffice to establish conduct severe and pervasive enough to create an objectively hostile work environment, as well as the absence of any evidence of a causal nexus between the harassing conduct plaintiff complains of and his race or national origin. Defendant has also shown that the plaintiff's retaliation claim fails because defendant had a legitimate, non-retaliatory reason for restructuring the 2005 bulk mail assistant schedule. Finally, defendant has shown that plaintiff cannot maintain a cause of action in federal court to challenge alleged violations of the Agreement.

As the party opposing summary judgment, plaintiff's burden was to identify with "reasonably particularity" any evidence of a genuine, material, triable issue of fact on his claims. On summary judgment, once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). Here, plaintiff's opposition consists of unsupported conclusory allegations, inadmissible hearsay evidence and speculation, and thus fails to supply the Court with any competent evidence of a material disputed issue of fact.

II.  **ARGUMENT**

 **A. Plaintiff's Claim of Failure to Promote Fails**

   **1. Plaintiff's Claim Is Untimely**

Plaintiff does not dispute that his discrimination claim based on defendant's failure to select him for transportation supervisor vacancies in 1999 to 2003 is untimely. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice," that must be separately exhausted before the EEOC.

*Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Pursuant to 29 C.F.R. § 1614.105(a)(1), a plaintiff must contact an EEO Counselor within 45 days of an alleged discriminatory act, or the effective date of an alleged discriminatory personnel action. The alleged discriminatory acts plaintiff complains of occurred between 1999 and 2003. Plaintiff has admitted that the did not contact an EEO Counselor until October 26, 2004, after the 45 day limitations period had passed for each of these alleged discriminatory decisions. (Declaration of Jennifer Wang In Support of Defendant's Motion for Summary Judgment ("Wang Decl.") Ex. A (Tam Dep.) 53:11-15, 59:6-8, 75:7-11 81:20-21,87:13-88:7 internal Ex. 11).

### 2. Plaintiff Cannot Rebut Defendant's Legitimate Reasons for His Actions as Pretextual

Plaintiff has offered no evidence suggesting that defendant's legitimate reason for failing to promote plaintiff to supervisor of transportation is prextual. Once an employer offers a nondiscriminatory reason for its actions, "the burden returns to the plaintiff to show that the articulated reason is a pretext for discrimination." *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003). To rebut that presumption, the plaintiff must produce "specific and substantial" evidence that the employer's reasons are a pretext for discrimination. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658-59 (9th Cir. 2002).

Here, defendant selected other candidates for available supervisor of transportation positions for a legitimate reason: others were better qualified than plaintiff – a reason that had nothing to do with plaintiff's race or national origin. Plaintiff argues that defendant's reasons are pretextual because, two African-American applicants – "Mr. Bussby" and Barbara Thomson – and a Hispanic applicant, Gloria Benavides, were selected for transportation supervisor vacancies for which plaintiff also applied.[2] That those selected for the position were African-American and Hispanic does not suffice to establish a discriminatory motive. *See Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003) (holding, in age discrimination case, that

---

[2] Plaintiff states that Benavides became a transportation supervisor in 2002, but does not indicate then Bussby or Thomson received became transportation supervisors. (Opp. at 3).

DEF.'S REPLY ISO MOT. FOR SUMMARY JUDGMENT
C07-02747 SI                                       3

without more, discriminatory motive could not be inferred from the fact that the plaintiff's replacement was younger).

In addition, plaintiff challenges defendant's proffered reason on the ground that Bussby, Thomson and Benavides were less qualified than plaintiff because they were mail handlers without experience working in a Transportation and Networks Division ("Transportation") when they were selected for supervisor of transportation positions. However, plaintiff cites no admissible evidence in support of his assertion. In opposing summary judgment, plaintiff cannot establish a genuine issue of material fact where the only evidence presented is uncorroborated and self-serving testimony. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Here, even if plaintiff's assertions in brief could be considered testimony, plaintiff lacks foundation to testify as to the work experience of others. Fed. R. of Evid. 602; (*See also* Opp. Ex. H (Benavides Dep. 6:8-13) ( prior to receiving her supervisor of transportation position, she served as an acting supervisor of transportation in San Francisco).

Plaintiff does not appear to suggest that Review Board ("Board") members were motivated by applicants' race or national origin in creating a list of the most qualified applicants for Inouye to interview for transportation supervisor vacancies. However, plaintiff asserts that, contrary to Inouye's statements, he did not use Boards in 1999, 2000, or 2003 to help determine the most qualified candidates. Plaintiff offers no evidentiary support for his assertion other than the fact that he was not "allowed to be in any selection process or review board," *i.e.,* was not selected for interview with the Board, during those years.[3] (Opp. 3). In

---

[3] Plaintiff cannot attribute inadequacies in his case to defendant. Contrary to plaintiff's assertion, defendant has never improperly refused to provide plaintiff with information concerning Board members who participated in the 1999, 2000, 2001, and 2002 selection process, the "results of the board interview," and the applications for transportation supervisor vacancies from 1999 through 2002. (Opp. 3). Rather, on multiple occasions, including January 2008, defendant's counsel informed plaintiff that pursuant to the USPS' document retention policies documents related to the 1999 to 2002 selection process for transportation supervisor vacancies had been destroyed before plaintiff filed his complaint. (*See* Supplemental Declaration of Jennifer S Wang ("Supp. Wang Decl.") ¶ 2, Ex. A). In response to plaintiff's request, defendant produced the application information from 2003. After a reasonably diligent search,

fact, plaintiff's assertions are contradicted by the deposition testimony he attaches to his brief. (*See e.g.*, Opp. Ex. G (Taylor Dep.) 29:4-5) (stating that there was a Board in 2000).

Plaintiff also argues that defendant's proffered reasons are pretext for discrimination because under Article 33 of the Agreement, plaintiff, as a member of the Motor Vehicle Craft, should have received priority for available supervisor of transportation positions over Bussby, Thomson and Benavides because they were mail handlers outside the craft. (Opp. 2). Contrary to plaintiff's assertion, Article 33 of the Agreement does not apply to selection of supervisor of transportation positions. Article 33 discusses "promotions to a craft position." But supervisory personnel are not considered "craft" employees for the purposes of the Agreement. (*See* Supplemental Declaration of Jennifer S Wang ("Wang Decl.") Ex. B (Agreement Excerpts) Art. 1.1, 1.2, 33; Opp. Ex. A (Inouye Dep.) 13:3-12). In fact, Article 1.2 of the Agreement explicitly states that its provisions do not apply to supervisory personnel. (Wang Decl. Ex. B). Unlike promotion to craft positions, selection for supervisory positions is based solely on the applicants' qualification. (Opp. Ex. A (Inouye Dep.) 13:3-12).

Even if plaintiff could demonstrate that Keith Inouye, the selecting official for the transportation supervisor vacancies at issue, violated the requirements of Article 33 in selecting Bussby, Thomson, and Benavides, plaintiff provides no evidence that this suggests Inouye was motived by discrimination in the selection of supervisors of transportation. Rather, plaintiff acknowledges that Inouye "issued many disqualification letter to many Motor Craft acting supervisor applicants." (*See* Opp. 3). Accordingly, plaintiff lacks substantial evidence of discriminatory intent.

**B. Plaintiff's Discrimination Claim Based on Delayed Reassignment to Driving Position Fails**

Plaintiff has not established a prima facie case of discrimination based on defendant's denial of his request for reassignment to a driving position in 2002 and delay in reassigning plaintiff in 2005.

---

defendant was unable to locate any lists of Board members in 2003. (*Id*. ¶ 2).

**1. 2002 Request**

First, failure to receive a requested reassignment does not constitute an adverse employment action. An adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of the plaintiff's employment. *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir.2000). Here, plaintiff cannot identify any material detriment from not receiving a reassignment. Rather, plaintiff has a personal preference for a driving position over a bulk mail assistant position. *See Ford v. Sheriff-Coroner's Dep't of Contra Costa Cty*, No. C-97-3396 VWR, 1998 WL 898468, at * 2-4 (N.D. Cal. Dec. 21, 1998) (plaintiff failed to show denial of transfer was adverse employment action where she failed to "identify some factor other than [her] own personal preference or [her] subjective feelings regarding each [position] in order to demonstrate an adverse action."); *McGowan v. City of Eufala*, 472 F.3d 736 (10th Cir. 2006) (the defendant's failure to assign the plaintiff to day shift not materially adverse where preference for shift was purely for personal reasons and she was not permanently denied the shift); *Kortan v. State of California*, 5 F. Supp. 2d 843, 853-54 (9th Cir. 1998) (denial of transfer request not actionable).

Plaintiff admits that at the time of his 2002 request for reassignment, he worked the same schedule that he originally bid for in 1999, when he chose to became a bulk mail assistant. ( Tam Dep. 35:2-18, 92:2-16, internal Ex. 4 ("Because of my personal reason that I want to be reassign[ed] to be [a] tractor-trailer operator again"). Plaintiff states that by 2002, he had decided that those hours made it difficult for him to keep a regular sleep pattern and fulfill his childcare responsibilities. (Supp. Wang Decl. Ex. C (Tam Dep.) 89:19-91:12). Accordingly, plaintiff preferred to return to a driving position because he could obtain a more convenient shift as a driver; as a bulk mail assistant he had the lowest seniority, but, from his USPS driving experience, plaintiff had "a lot of seniority" as a driver. (Tam Dep. 97:23-98:14).

Second, even if plaintiff could establish that defendant's failure to reassign plaintiff in 2002 constitutes an adverse employment action, plaintiff has not identified any similarly situated employee outside of his protected class who was treated more favorably. A "similarly

situated" employee is one whose job is similar to the plaintiff's "in all material respects," and who displayed conduct similar to the plaintiff's. *Moran v. Selig*, 447 F.3d 748, 756-57 (9th Cir. 2006); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004). The plaintiff's and his comparators' circumstances must have been nearly identical for his comparators to qualify as "similarly situated." *Moran*, 447 F.3d at 756.

In his opposition, plaintiff asserts, without any corroborating evidence, that three other bulk mail assistants Danny Clark, Norman Davis, and Debbie Nails received reassignment back to a full-time driving position. However, plaintiff fails to offer evidence showing that these comparators were similarly situated to plaintiff in "all material respects." Plaintiff asserts that these comparators were reassigned to driving positions without providing any information regarding the circumstances of the reassignment, or when these reassignments occurred. Moreover, plaintiff concedes that Nails is not similarly situated to plaintiff because, she requested transfer back to a driving position within 90 days. (Opp. 4). Plaintiff concedes that pursuant to Article 39 of the Agreement, employees voluntarily reassigned from one position to another may return to their former position within 90 days. (*Id.*).

Even if plaintiff had set forth a prima facie case of discrimination, he has failed to rebut defendant's legitimate, non-discriminatory reasons for failing to reassign plaintiff in 2002. Plaintiff did not receive his requested reassignment to a full-time tractor trailer operator in 2002 because no vacancies were available. *See Kortan*, 5 F. Supp.2d at 854 (lack of vacancy is legitimate reason to deny transfer). Plaintiff argues that the "sign-up sheet" for 2003 tractor trailer bid positions shows 12 "residual,' or open positions after existing drivers had completed their annual bidding for positions. (Opp. Ex. A internal Ex. 23). However, the "sign-up sheet" plaintiff cites shows that each of these "residual" positions were abolished, not vacant. Plaintiff suggests, without support, that the positions were only abolished because they were unfilled by current drivers, and thus should have been offered to him; however the "sign-up sheet" plaintiff cites shows that even bids actually assigned to individual drivers were abolished.

Plaintiff also argues that a vacant driving position existed in 2002 because a driver, Mr. Reinosa, passed away in September 2002. Even if true, plaintiff fails to offer evidence

DEF.'S REPLY ISO MOT. FOR SUMMARY JUDGMENT
C07-02747 SI                                           7

demonstrating that this vacancy should have been offered to him. Pursuant to the Agreement, defendant must give first priority for available full-time tractor trailer operator ("TTO") positions to current drivers, *i.e.*, TTOs and part-time flexible motor vehicle operations ("MVOs"). It is undisputed that at the time of his request, plaintiff worked as a bulk mail assistant, not as a driver. Accordingly, plaintiff has failed to offer "substantial" and "specific" evidence that defendant's reason for failing to reassign plaintiff in 2002 is pretextual.

### 2. 2005 Request

Plaintiff has failed to establish a prima facie case of discrimination based on the delay in his reassignment to a driving position in 2005. First, plaintiff cannot show that he suffered any adverse employment action. Even if denial of a request for reassignment to a driving position could be considered an adverse employment action, it is undisputed that plaintiff actually received the requested reassignment. (Opp. 5; Tam Dep. internal Ex. 8). Plaintiff requested reassignment in February 2005, and ultimately received his reassignment in September 2005. (Tam Dep. internal Exs. 5, 8). Plaintiff also appears to suggest that he suffered an adverse employment action because he received reassignment to a part-time, rather than full-time position. However, plaintiff does not dispute that in 2005, he requested reassignment to a part-time driving position. (Tam Dep. internal Ex. 5).

Even if the seven month delay between plaintiff's February 2005 request and his September 2005 reassignment could be considered an adverse employment action, defendant has a legitimate, non-discriminatory reason for its delay. Plaintiff submitted a written request for reassignment to a part-time flexible motor vehicle operator in February 2005 to Balvindar Chadha, Manager of Postal Vehicle Service, and Inouye. However, plaintiff was informed that around October 15, 2003, the USPS had instituted a new website – eReassign, managed by Human Resources – to process requests for voluntary reassignments. (Declaration of Balvinder Chadha ("Chadha Decl.") ¶ 8, Ex. D), and that consistent with the USPS' new policy, plaintiff had to apply for his reassignment via the eReassign website. (*Id*. ¶ 8; Tam Dep. 118:11-16). Plaintiff submitted his application via the eReassign website around May 2005 (Tam Dep. Ex. 6

(eReassign Application)), and obtained reassignment to a part-time flexible MVO position only four months later, around September 17, 2005. (*Id*. 118:21-119:3; Ex. 8).

### C. Plaintiff's Claim of Discrimination Based on Failure to Change His 2005 Work Schedule Fails

Plaintiff cannot establish a prima facie case of discrimination based on defendant's refusal to change his work schedule in February 2005.[4] Defendant's refusal does not constitute an adverse employment action. As the bulk mail assistant with the lowest seniority, since 1999 plaintiff had received the relief position during bidding. (Tam Dep. 97:20-98:17). Plaintiff cannot show that obtaining the same bid constitutes a material adverse change in the terms and conditions of his employment. Also, plaintiff cannot identify any similarly situated individual outside of his protected classes who received a requested work schedule change outside the annual bidding process. (*Id*. 97:20-98:14, 171:7-22).

Even if plaintiff has established a prima facie case of discrimination, he has failed to rebut defendant's legitimate, non-discriminatory reason for failing to change plaintiff's schedule in February 2005, after completion of annual bidding. Each year, plaintiff's managers developed a schedule of bulk mail assistants positions that would efficiently and effectively carry out the operational needs of Transportation. (Chadha Decl. ¶¶ 3-4). Once the bulk mail assistants obtained their positions for the year, changing one bid (*i.e.,* position) would affect the other bids, and thus, upset the entire bulk mail assistant schedule and the operational goals for which it was developed. In fact, plaintiff admits that once bidding is completed, his managers

---

[4] In his Opposition, plaintiff appears to raise new claims of discrimination based on his 2003 and 2004 schedules not previously alleged in his second amended complaint. A plaintiff is not allowed to add new claims not included in the complaint through briefing on a motion for summary judgment. *Dolan v. United States*, No. 05-3062-CL, 2008 WL. 362556, at * 22 (D. Or. Feb. 8, 2002) (refusing to consider the plaintiff's claims of retaliation based on her transfer to another district and delayed placement because these claims were not included in her complaint) *citing Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Accordingly, plaintiff's claims related to his 2003 and 2004 scheduled should not be considered.

Moreover, plaintiff admits that he resolved his complaints regarding his 2003 schedule as part of an EEO settlement. By voluntarily entering into a settlement of her EEO claims, plaintiff is precluded from reviving his underlying claims in a Title VII lawsuit. *See Kirby v. Dole*, 736 F.2d 661, 663-664 (11th Cir. 1984); *Sherman v. Standard Rate Data Serv., Inc.*, 709 F. Supp. 1433, 1437-38 (N.D. Ill. 1989). Plaintiff admits that he entered an EEO settlement to change his 2003 work schedule, and that the work schedule developed during that settlement continued through 2004. (Opp. 4).

DEF.'S REPLY ISO MOT. FOR SUMMARY JUDGMENT
C07-02747 SI                                          9

"cannot change [the schedule]. If they change it, they got to ruin the whole bid, because every-year process." (Tam Dep. 100:3–8).

### D. Plaintiff's Discrimination Claim Based on Denial of Annual Leave Fails

Plaintiff's discrimination claim based on defendant's denial of his January 27, 2005 request to take annual leave from February 9-11, 2005 fails. Plaintiff has not established a prima facie case of discrimination. Here, plaintiff not only provided less than two-weeks' notice of his leave, but also requested leave on those days in which he was the only bulk mail assistant scheduled to work his shifts. Plaintiff has not identified another employee outside of plaintiff's class who was treated more favorably under similar circumstances. Moreover, defendant proffered a legitimate, nondiscriminatory reason for denying plaintiff's annual leave request: plaintiff did not provide sufficient advance notice, and his absence would have resulted in insufficient coverage of plaintiff's shift. In his opposition, plaintiff cites no evidence rebutting defendant's legitimate, non-discriminatory reason.

### E. Plaintiff's Claim of Discrimination Based on Failure to Call Plaintiff to Work Overtime on February 12, 2005 Fails

Plaintiff has not established a prima facie case of discrimination based on defendant's decision not to call plaintiff in to work overtime on February 12, 2005, plaintiff's scheduled day off. Denial of overtime opportunities is not an adverse employment action under Title VII. *Garity v. Potter*, 2008 WL 872992, at * 3 (D. Nev. Mar. 27, 2008). Plaintiff is not entitled to work overtime hours. Accordingly, plaintiff has not alleged any action that affected plaintiff's the terms, conditions, or privileges of his employment. Moreover, plaintiff testified that he knows of no similarly situated employee who was treated more favorably, *i.e.*, was called in on a scheduled day off to work overtime on February 12, 2005. (Tam Dep. 186:12-15, 187:15-188:2, 188:11-23).

Even if plaintiff could establish a prima facie case of discrimination, defendant has legitimate, non-retaliatory reasons for not calling plaintiff for overtime on February 12, 2005. February 12, 2005 was plaintiff's scheduled day off. (*See* Chadha Decl. ¶ 7). The USPS does not require supervisors to call in employees to report to work overtime on their scheduled days

off. (*Id.*). Chadha determined that he did not need an assistant to come in for eight hours of work; rather, sufficient coverage for February 12, 2005 could be provided by calling in another bulk mail assistant, William Jones, scheduled to work on February 12, 2005, to begin his shift four hours early. (*Id.* ¶ 7). This decision reflected a business judgment to reduce costs by incurring only four, rather than eight hours of overtime costs. (*Id.*; Supp. Wang Decl. Ex. B at Art. 8.8(B) (employee will be guaranteed eight hours of work, or pay in lieu thereof, when called in on the employee's scheduled day off ).

Plaintiff argues that defendant's proffered reason is pretext for discrimination because Chadha has, on unspecified occasions, threatened his supervisor, Lucius Paulk, with discipline if he continued to call plaintiff in for overtime, and has settled an overtime related grievance with Jones but not plaintiff. First, plaintiff cites no evidence in support of his assertion that Chadha only restricted Paulk's use of plaintiff (rather than all bulk mail assistants) for overtime on a scheduled days off, nor does plaintiff provide any information regarding the context in which Paulk has attempted to unsuccessfully call plaintiff in to work overtime on his scheduled days off. Rather, Chadha articulated a "no call in overtime policy" to restrict overtime use of bulk mail assistants on their scheduled days off. Plaintiff admits that this overtime policy applies to all the bulk mail assistants, not just plaintiff. (Tam Dep. Tr. 188:6-23). Contrary to plaintiff's assertion, Chadha did not make an exception to his "no call in overtime policy" in requesting that Jones begin his shift early on February 12, 2005. It is undisputed that plaintiff, unlike Jones, was not scheduled to work on February 12, 2005.

Second, that Chadha settled an overtime related union grievance brought on Jones' behalf, and did not settle an overtime related grievance brought on plaintiff's behalf does not suggest any discriminatory intent. The grievances plaintiff cites do not related to the overtime request for February 12, 2005, and plaintiff offers description of the context in which the need for overtime arose.

**F. Plaintiff's Claim of Discrimination Based on Intimidating Comments Fails**

DEF.'S REPLY ISO MOT. FOR SUMMARY JUDGMENT
C07-02747 SI                                11

Plaintiff cannot establish a prima facie case of discrimination based on his allegation that Inouye approached him on September 23, 2004 and intimidated him by telling him that he fought against the system. Verbal threats do not constitute adverse employment actions because of their lack of consequence; they do not affect the terms of conditions of employment. *See Helgeson v. Am. Int'l Group, Inc.*, 44 F. Supp. 2d 1091, 1098 (S.D. Cal. 1999).

**G. Plaintiff's Retaliation Claim Fails**

Summary judgment for defendant on plaintiff's retaliation claim is appropriate because has not offered specific or substantial evidence to rebut defendant's legitimate, non-retaliatory reasons for restructuring the 2005 bulk mail assistant schedule.[5] Proof of unlawful retaliation is established using the same framework used to prove discrimination under Title VII. *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003). Once the plaintiff makes out a prima facie case of retaliation, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id*. If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. *Id*. The plaintiff must proffer "specific" and "substantial" evidence of pretext to overcome a motion for summary judgment. *Id.*; *see Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 800-01 (9th Cir. 2003).

Defendant restructured the 2005 bulk mail assistant schedule to create more overlap in the reporting hours for the three tours, with the intention of reducing the need to require an assistant to work over his or her scheduled hours, and thus, reduce overtime costs. (Chadha Decl. ¶ 5, Ex. A). As part of the restructuring, the reporting time and days for *all* of the bulk mail assistant positions were changed, not just that of the relief assistant. (*Id.*).

Plaintiff argues defendant's reasons are pretextual because the 2005 schedule required him to work hours outside the scope of his position. Plaintiff asserts that he did not hold a "relief" position, but rather "tour 2 relief" position, *i.e.,* a position to relieve only tour 2 bulk mail assistants to allow those clerks to take scheduled days off as well as breaks during their

---

[5] Here, it is unclear what protected activity plaintiff claims caused defendant's alleged retaliatory conduct.

DEF.'S REPLY ISO MOT. FOR SUMMARY JUDGMENT
C07-02747 SI                              12

shifts. (Opp. 4, internal Ex. D (Chadha Dep. Tr.) 35:4-36:2, 37:22:-24). Plaintiff suggests that as a tour 2 relief assistant he only expected to work shifts beginning at 7:00 a.m. (Opp. 5). Plaintiff's 1999 schedule contradicts his argument; in 1999, when plaintiff first bid for a bulk mail position, the relief position he obtained required that he start at 3:00 p.m. on Mondays and 10:00 a.m. on Tuesdays. (Opp. 5). Moreover, plaintiff provides no evidence, other than his self-serving statements, that the bulk mail assistant relief position must be limited to "tour 2 relief." Indeed, the bulk mail assistant schedules simply list a single "relief" position. (*See* Opp. Ex. B internal Ex. 1). Chadha explained, and plaintiff does not dispute, that there is only one relief position, not three relief positions, *e.g.*, one for each of the three tours (or shifts). (Opp. Ex. D (Chadha Dep. Tr.) 14:11-17). Because there is only one relief position, the relief assistant, depending on the office's workload and operational needs, may be scheduled to cover more than one tour. (*Id.* 15:12-24).

Also, plaintiff disputes defendant's proffered reasons for the 2005 schedule on the ground that his Wednesday schedule served no business purpose because it required him to begin work at 7:00 p.m., when two other clerks were still on duty. Plaintiff provides no evidence supporting his assertion that this schedule was cost ineffective. (Opp. 4). Rather, the 2005 schedule shows that plaintiff's Wednesday hours served to relieve two tour 2 clerks, permitting those clerks to take meal and other necessary breaks. (*See* Opp. 4, Ex. B (Orozco Dep. Tr.) internal Ex. 1 at 4, Ex. D (Chadha Dep. Tr.) 34:12-16, 37:11-24). Moreover, the Wednesday schedule plaintiff complains of is consistent with defendant's articulated purpose in restructuring the 2005 bulk mail assistant schedule: to create more overlap in the reporting hours for the positions in order to reduce the need to require an assistant to work over his or her scheduled hours.

In his Opposition, plaintiff argues that the defendant's reasons are pretext for retaliation because the 2005 schedule defendant created violates the Agreement. Plaintiff asserts, without further explanation, that the 2005 schedule violates Articles 1.6, 8, 14, and 34(A), (B) and (C) of the Agreement. Article 1.6 states that "[s]upervisors are prohibited from performing bargaining-unit work." (Supp. Wang Decl. Ex. B). Given that plaintiff complains that too

many bulk mail assistants were scheduled to work the same shifts, it is unclear how supervisors would be forced to perform bargaining unit work as a result of the 2005 schedule. Article 8 states, among other things, that "[a]s far as practicable the five days of an employees work week shall be consecutive days within the service week." (*Id*. at 8.2(C)). Accordingly, that the 2005 schedule required non-consecutive days off for several of the positions, including that of the relief position, does not suggest violation of Article 8. Article 14 requires "management to provide safe working conditions." Nothing in the 2005 schedule suggests that defendant required bulk mail assistants to work in unsafe conditions. Article 34(A) recognizes the principle of "a fair day's work for a fair day's pay;" Article 34(B) requires the USPS to provide a "fair, reasonable and equitable" work measurement systems and time or work standards; Article 34(C) states that before changing any work measurement systems or time or work standards, management will notify the union in advance. (*Id*.). Plaintiff does not assert that, under the 2005 schedule, bulk mail assistant were not properly paid, required to work under different productivity standards. Accordingly, plaintiff has failed to meet his burden of establishing substantial evidence of retaliatory intent.

### H. Plaintiff Cannot Establish a Hostile Work Environment/Harassment Claim

Plaintiff has not identified any evidence of a genuine, material, triable issue of fact related to his claim for hostile work environment. In fact, he has offered no discussion of his harassment claim in his Opposition. To establish a claim of hostile work environment harassment, plaintiff must provide that harassment in his workplace is sufficiently severe or pervasive as to alter the terms or conditions of employment and create an abusive work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993). Also, plaintiff must establish a causal nexus between the harassment and plaintiff's protected characteristics. *See Palesch v. Missouri Comm'n on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000).

Defendant has shown that harassment plaintiff alleges does not rise to a hostile work environment as a matter of law. Plaintiff bases his harassment claim on seven alleged events that took place over a span of three years, from 2004 to 2007. None of these incidents plaintiff complains of amount to an objectively hostile work environment: plaintiff does not complain

of any profanity; crude behavior, or conduct causing him any humiliation. Even if true, these isolated incidents, occurring across a three year span, do not rise to the level of unlawful harassment. *See Farragher*, 524 U.S. at 788. Also, plaintiff has offered nothing more than speculation and conjecture of defendant's discriminatory intent. *See Palesch*, 233 F.3d at 567-68 (to meet his burden to defeat summary judgment, plaintiff must offer "more than speculation and conjecture to make the required connection from the mistreatment she alleges to gender or race-based animus"). Accordingly, plaintiff's harassment claim fails.

**I. Plaintiff Cannot Bring Claim for Violations of the Agreement**

Plaintiff cannot assert a claim for violation of the Agreement between the APWU and USPS. A USPS employee subject to a collective bargaining agreement containing a binding procedure for resolving grievances cannot maintain a cause of action unless the union failed to provide him fair representation. *See Bowen v. United States Postal Serv.*, 459 U.S. 212, 220-22 (1983); *Johnson v. United States Postal Serv.*, 756 F.2d 1461, 1467 (9th Cir. 1985). Even if plaintiff's claim could be construed as a one for inadequate representation, he can provide no evidence for that claim because he did not file grievances for the violations he now alleges.[6] (Tam Dep. 222:17-223:17). *See Stupy v. United States Postal Serv.*, 951 F.2d 1079, 1082 (9th Cir. 1991) ("To establish that the union breached its duty of fair representation, the employee must *attempt* use of the contract grievance procedure.").

**III. CONCLUSION**

For the reasons stated above, defendant respectfully requests that the Court grant summary judgment in his favor.

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney
/s/

Dated: June 13, 2008

JENNIFER S WANG
Assistant United States Attorney

---

[6] Although plaintiff states that he did not receive a copy of the Agreement until 2006, he does not suggest that the APWU improperly withheld the Agreement, nor does he suggest that he was not aware of grievance procedures until 2006. In fact, plaintiff cites to a grievance he filed in 2004, prior to his receipt of a copy of the Agreement. (Opp. Ex. D, Ex. 5).

DEF.'S REPLY ISO MOT. FOR SUMMARY JUDGMENT
C07-02747 SI                                    15