JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
JENNIFER S WANG (CSBN 233155)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-6967
   Facsimile: (415) 436-6748
   jennifer.s.wang@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFFREY W. TAM,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN E. POTTER,<br><br>    Defendant. | No. 07-2747 SI<br><br>**DEFENDANT'S RESPONSES TO ORDER DIRECTING SUPPLEMENTAL BRIEFING** |

## I. INTRODUCTION

Defendant, John E. Potter, Postmaster General of the United States Postal Service ("Postal Service") offers this supplemental briefing, as well as the supporting declarations of Balvinder Chadha and Linda Lee, in response to the Court's June 30, 2008 Order. Pursuant to the Court's June 30, 2008 Order, in this supplemental briefing, defendant focuses on the plaintiff's claim of race and/or national origin discrimination based on his failure to receive reassignment as a driver until around September 2005.

Assuming for the purposes of this supplemental briefing that plaintiff has established a prima facie case of discrimination based on the Postal Service's failure to reassign him until

September 2005,[1] plaintiff has not offered admissible evidence rebutting defendant's legitimate, non-discriminatory reason for his actions: no vacant positions were available to plaintiff.

At the heart of this case are the terms imposed by the Postal Service's collective bargaining agreement with the American Postal Worker's Union, AFL-CIO (the "Agreement") in filling the full-time Tractor Trailer Operator ("TTO") position sought by plaintiff. Generally, full-time driving assignments must be filled by bidding; only full-time drivers can participate in bidding for full-time driving assignments. When a vacant assignment remains after full-time drivers are provided the opportunity to bid for the vacancy, that vacancy is filled by converting the most senior, qualified part-time driver. Because plaintiff was a bulk-mail assistant at the time he made his requests for reassignment, and not a driver, no full-time TTO assignments were available to him. In contrast, to full-time drivers, part-time drivers do not hold bid assignments; they do not drive consistent routes or work consistent tours. Individuals need not bid for openings for part-time drivers. Thus, when Transportation obtained authority to hire additional part-time drivers, plaintiff was offered, and accepted, reassignment as a part-time motor vehicle operator ("MVO"). Plaintiff has not offered, and cannot offer, any evidence of a vacant full-time TTO position that should have been made available to him. Thus, plaintiff has not offered evidence sufficient to rebut defendant's legitimate, non-discriminatory reason for the defendant's actions.

## II. RESPONSES TO COURT'S QUESTIONS

**A. 2003 Bid Sign-Up Sheets Do Not Show Vacancy Status of Full-Time TTO Positions as of May 2002 (Response to Question 1)**

Contrary to plaintiff's contention, the document entitled "'2003' Tractor/Trailer Operators Bid Sign-Up" ("Exhibit 23"), (*see* Pl.'s Opp. Ex. A internal Ex. 23) does not show

---

[1] Defendant does not concede that plaintiff has established a prima facie case of discrimination based on his failure to receive reassignment as a driver until 2005.

DEF'S RESPONSES TO ORDER DIRECTING SUPPLEMENTAL BRIEFING
C07-2747 SI                          2

what full-time TTO vacancies existed as of May 2002.[2] First, because this evidence has not been authenticated, and plaintiff lacks personal knowledge sufficient to authenticate Exhibit 23, it is inadmissible. *See* Fed. R. Evid. 603, 901. Although plaintiff appears to claim that Exhibit 23 is a listing of results of the annual bidding for 2003 full-time TTO assignments (*see* Pl. Opp. at 4-5), Keith Inouye, Manager of the Transportation Networks Division ("Transportation") at the Postal Service's Processing and Distribution Center in Oakland, California ("Oakland P&DC"), testified that Exhibit 23 *was not* a document created during the normal annual bidding process. (Pl.'s Opp. Ex. A at 89:19-90:19). Plaintiff, then a bulk mail assistant, was neither involved in the annual bidding for 2003 driving assignments or the creation of Exhibit 23, and thus, lacks foundation to testify to the authenticity of Exhibit 23 or what full-time TTO vacancies were available either during or after the annual bidding process.

Second, Balvinder Chadha, the Manager of Postal Vehicle Services Operations within Transportation at the Oakland P&DC, has identified Exhibit 23 as a worksheet used by Mr. Chadha and Mr. Inouye during the Postal Service's Breakthrough Productivity Initiative ("BPI") around the Summer of 2003. (Supplemental Declaration of Balvinder Chadha In Support of Defendant's Motion for Summary Judgment ("Supp. Chadha Decl.") ¶¶ 7,8; *see also* Pl.'s Opp. Ex. A 89:19-23). In the Summer of 2003, as part of the BPI, the Postal Service's headquarters in Washington, D.C., directed the Oakland P&DC to review the number of full-time driving assignments necessary to meet its operational needs and recommended the reduction of approximately twenty full-time driving assignments. Mr. Chadha and Mr. Inouye

---

[2] To the extent plaintiff's discrimination claim is based on a denial of his reassignment requests in 2002, or defendant's failure to give him a specific, vacant full-time TTO bid in 2002, plaintiff's claim is untimely. Plaintiff did not file an EEO complaint regarding his failure to obtain a reassignment in 2002. *See* Declaration of Jennifer S Wang In Support of Defendant's Motion for Summary Judgment Ex. A (Excerpts of Tr. of 12/12/07 Deposition of Jeffrey W. Tam) 123:1-19); 29 C.F.R. § 1614.105(a)(1) (aggrieved employee must contact an EEO Counselor within 45 days of an alleged discriminatory act, or the effective date of an alleged discriminatory personnel action); *Johnson v. United States Treasury Dep't*, 27 F.3d 415, 416 (9th Cir. 1994) (failure to file a timely EEO charges is treated as a violation of a statute of limitations).

used worksheets such as Exhibit 23 to aid in their review of existing full-time driver bids to determine whether any could be deleted or restructured. (*Id*. ¶ 7). As part of the BPI review, Mr. Chadha and Mr. Inouye deleted and restructured the schedule (*e.g.*, the scheduled days off ("SDO") or reporting times) of some existing bids to consolidate the work previously handled by multiple bids. (*Id*.). Bids were "abolished," or deleted, because they were no longer necessary, either because there was insufficient work available to justify maintaining the bid or because the work managed by the bid could be absorbed by another bid. (*Id*.). A bidding process was held around August or September 2003, at the completion of the BPI review to allow full-time drivers who held abolished or restructured assignments to bid, by seniority, for the restructured assignments that remained. (*Id*.). During the BPI review, the deleted assignments held by the most junior full-time drivers were "excessed" rather than "abolished." Unlike drivers holding abolished assignments, the drivers with excessed assignments did not enter the new bidding process. (*Id*.). Rather, they were given the choice of obtaining a position outside the PVS unit (also known as Motor Vehicle Craft unit) or leaving Postal Service employment. Thus, after the BPI restructuring, Transportation had more full-time drivers than available driving assignments. (*Id*.). All full-time TTO bids were filled by full-time TTOs. Exhibit 23 lists full-time TTO bid number 363 as "residual." (*Id*.). In the post-BPI review bidding process, bid number 363 was filled by a full-time TTO, Michael Miller. (*Id*. ¶ 7, Ex. C).

      Moreover, even if plaintiff's evidence were admissible and what it is purported to be – results of the annual bidding for 2003 full-time TTO assignments – it would not reflect what assignments, if any, were available in May 2002. Within the Postal Service, bidding for assignments in the upcoming year takes place around November or December. (*Id*. ¶ 8). Annual bidding for 2003 assignments would have taken place around the end of 2002. (*See id*.).

      Also, even if Exhibit 23 listed the vacancy status of full-time TTO assignments at the completion of annual bidding for 2003 assignments (which it does not), it would not show any vacancies available to plaintiff. In 2002, plaintiff was a bulk mail assistant, not a driver. Only

full-time drivers are permitted to take part in annual bidding for full-time driving positions. (*Id*. Ex. A at Art. 39.1.C.7). If, after all full-time drivers have completed bidding, a vacant full-time TTO assignment remained (a "residual"), pursuant to the Agreement, that bid must be filled by converting the most senior, qualified part-time driver into a full-time TTO. (Declaration of Keith Inouye In Support of Motion for Summary Judgment ("Inouye Decl.") Ex. A at Art. 39.1.B.7). The only residual full-time TTO assignment shown on Exhibit 23 is number 363; that residual was filled by a full-time TTO Michael Miller. (Supp. Chadha Decl. ¶ 8, Ex. C). Accordingly, Exhibit 23 fails to show that any vacancy that could be made available to plaintiff existed as of May 2002.

### B. No Available Full-Time TTO Bid Existed After Mr. Reinosa Left His Bid (Response to Question 2)

Plaintiff asserts that Mr. Reinosa held a full-time TTO bid, and that after Mr. Reinosa's death in 2002, Mr. Reinosa's bid should have been made available to plaintiff. Plaintiff is wrong. After Mr. Reinosa left his bid around November 2002, defendant "reverted," (*i.e.*, deleted) that bid; the bid was not posted as a vacancy. (*Id.* ¶¶ 4-5, Ex. A at Art. 39.2.A.1 & Ex. B). When a bid becomes vacant during the year, the Postal Service must assess whether to "revert" the bid, or to retain the bid and post it as a vacancy. (*Id*. Ex. A at Art. 39.2.A.1). Here, Mr. Chadha and Mr. Inouye determined that Transportation lacked sufficient work to justify maintaining Mr. Reinosa's bid. (*Id*. ¶ 5). Mr. Reinosa held a bid as a yard spotter, a driver who transports equipment between docks within the Oakland P&DC facility. (*Id*.). At that time, the Postal Service had, in addition to Mr. Reinosa, three other yard spotters who worked the same shift as Mr. Reinosa. (*Id*.). Mr. Chadha and Mr. Inouye determined that Mr. Reinosa's work could be handled by the three remaining yard spotters. (*Id*.). Accordingly, Mr. Reinosa's bid was never posted as a vacancy. Moreover, defendant has a legitimate, non-discriminatory reason for its decision not to retain Mr. Reinosa's bid.[3]

---

[3] Even if the Postal Service had opted to retain Mr. Reinosa's bid, it would not have been available to plaintiff. Pursuant to the Agreement, priority for full-time driving positions is first

### C. Plaintiff Has Provided No Evidence of Any Vacant Full-Time TTO Positions in May 2002 (Response to Question 3)

Plaintiff has provided no evidence of any full-time TTO vacancies in May 2002. Although plaintiff produced a document, Exhibit 23, purporting to list available positions around or after annual bidding conducted in November or December 2002 for full-time TTO assignments in the upcoming year, that document was not created as part of the annual bidding process. As discussed above, even if the document were, as plaintiff claims, part of the annual bidding process, it would not reflect what, if any, full-time TTO assignments were vacant in May 2002. Moreover, plaintiff, through Exhibit 23, has offered evidence of only one full-time TTO vacancy; that bid was filled by a full-time TTO. (*Id*. ¶ 8, Ex. C).

### D. Although 2005 Bid Assignment Sheets Show Vacant Full-Time TTO Positions, Those Vacancies Were Filled By Qualified Part-Time Flexible Drivers (Responses to Questions 4, 5, 6)

Plaintiff asserts that vacant full-time TTO bids existed in May 2005, and that those vacancies should have been made available to him. The 2005 bid assignment sheet listing results of annual bidding for 2005 assignment shows that six vacant full-time TTO bids remained after full-time TTOs completed the bidding process.[4] (*Id*. ¶ 9, Ex. D). Pursuant to the Agreement, those vacancies were filled by converting the six qualified, part-time drivers into full-time TTOs. (*Id*. ¶ 9, Exs. E and F). The conversion process for the six drivers was completed by June 11, 2005. (*Id*. ¶ 9, Ex. F).

### E. Plaintiff's eReassgin Request (Responses to Questions 7 and 8)

---

given to full-time drivers, and then to the most senior, qualified part-time driver. (Inouye Decl. Ex. A). From May 2002 to March 2005, the Oakland P&DC had a full staff of part-time flexible drivers available to fill any full time TTO positions that became vacant. (Supp. Chadha Decl. ¶ 6).

[4] The 2005 bid assignment sheets ("Exhibit 24"), (Pl.'s Opp. Ex. A internal Ex. 24") offered by plaintiff appears to be an incomplete version of the 2005 bid assignment sheet created as part of annual bidding. (Supp. Chadha Decl. ¶ 9). Because this evidence has not been authenticated, and plaintiff lacks personal knowledge sufficient to authenticate Exhibit 24, it is inadmissible. *See* Fed. R. Evid. 603, 901.

DEF'S RESPONSES TO ORDER DIRECTING SUPPLEMENTAL BRIEFING
C07-2747 SI                                6

Although, in his written request of February 2005, plaintiff sought reassignment to a part-time flexible Motor Vehicle Operator ("MVO") position, his May 31, 2005 electronic reassignment requests reassignment to a full-time TTO position. (Declaration of Linda Lee In Support of Plaintiff's Motion for Summary Judgment ("Lee Decl.") ¶ 3). In reassigning plaintiff, defendant did not value plaintiff's written request for reassignment over his request for a full-time position. Rather, no full-time TTO positions were available for non-drivers. (Supp. Chadha Decl. ¶ 9). Pursuant to the Agreement, full-time TTO positions are first made available to full-time drivers and then to part-time drivers. (Lee Decl. ¶ 4; Supp. Chadha Decl. Ex. A at Art. 39.1.B.7). At the time of plaintiff's eReassign request, the full-time TTO vacancies that remained after full-time drivers completed their annual bidding were in the process of being filled via conversion of existing qualified, part-time flexible drivers. (Supp. Chadha Decl. ¶ 9). Around March 2005, Transportation had sought hiring authority from the Senior Plant Manager of the Oakland P&DC for additional part-time flexible drivers. (*Id*. ¶ 6). Accordingly, because plaintiff could not be reassigned to a full-time TTO position, and because the Postal Service understood that he wanted a return to driving, he was offered reassignment as a part-time MVO. (Lee Decl. ¶ 4). Although plaintiff had the option of declining, he accepted the reassignment. (*Id*.). Plaintiff received his reassignment in September 2005. (*I*d.). In March 2006, plaintiff was converted to a full-time TTO to fill a residual assignment that remained after the completion of annual bidding for 2006 full-time TTO assignments. (Supp. Chadha Decl. ¶ 10).

///
///
///
///

**III. CONCLUSION**

1  Based on the foregoing, defendant's pleadings and papers on file in this action, and oral argument, defendant respectfully requests that his motion for summary judgment be granted in its entirety.

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

Dated: July 10, 2008

/s/
JENNIFER S WANG
Assistant United States Attorney