JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
JENNIFER S WANG (CSBN 233155)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6967
    Facsimile: (415) 436-6748
    jennifer.s.wang@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFFREY W. TAM,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN E. POTTER,<br><br>    Defendant. | No. 07-2747 SI<br><br>**SUPPLEMENTAL DECLARATION OF BALVINDER CHADHA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

I, Balvinder Chadha, declare as follows:

    1. I am over 18 years of age, am a resident of the State of California, and make this declaration in support of defendant's motion for summary judgment. The statements contained in this declaration are within my personal knowledge.

    2. Currently, I am the Manager of Postal Vehicle Service ("PVS") Operations (also known as Motor Vehicle Craft Unit) for the United States Postal Service ("Postal Service") Processing & Distribution Center ("P&DC") in Oakland, California ("Oakland P&DC"). I was permanently assigned to my position as Manager of PVS Operations in 2004. In 2002 and 2003, I served as the Acting Manager of PVS Operations. PVS Operations is part of the Transportation Networks Division ("Transportation") at the Oakland P&DC, and I report to

Keith Inouye, Manager of Transportation at the Oakland P&DC. I am responsible for oversight of all postal vehicle operations and supervision of drivers and bulk mail assistants at the Oakland P&DC. Postal vehicle drivers at the Oakland P&DC include Tractor Trailer Operators ("TTO") and Motor Vehicle Operators ("MVO").

3. As the Manager of PVS Operations, I have primary responsibility for creating the work schedules and routes for full-time drivers at the Oakland P&DC. Around November or December of every year, full-time drivers take part in annual bidding. During this process, full-time drivers bid for the assignments they will hold for the upcoming year. Every year, prior to the annual bidding process, I work with my staff to determine what driver positions (also known as "bids" or "duty assignments") will be necessary to efficiently and effectively carry out the operations of Transportation. As part of this process, I determine the reporting times and days for the full-time driving assignments that will be offered during annual bidding. Also, as part of the annual bidding process, I work with my staff in creating the bid sign-up sheets, which list the bids or assignments available for coming year. Priority in the bidding process is determined by seniority. Full-time drivers work a consistent tour, or shift, which they select during the annual bidding process. Part-time flexible drivers do not work fixed tours or consistently drive the same routes. There are no part time flexible assignments or annual bidding for part time flexible drivers. However, if, after annual bidding, vacant assignments (also known as "residuals") remain after all full-time drivers have obtained their assignments, pursuant to Article 39.1.B.7 of the national collective bargaining agreement between the United States Postal Service and the American Postal Worker's Union, AFL-CIO (the "Agreement"), the most senior, qualified part-time flexible drivers are converted into full-time driving positions and given the vacant assignments.

4. During the year, a full-time driver might leave his bid. When that occurs, pursuant to the Article 39.2.A.1 of the Agreement the Postal Service may "revert" (or delete) the position, or retain the position and post it as a vacancy. A true and correct copy of excerpts of the relevant Agreement is attached as Exhibit A. In making that determination, Mr. Inouye and I

assess whether that bid is necessary to carry out Transportation's operations. If we determine that Transportation lacks sufficient work to justify maintaining that assignment, the assignment may be "reverted," or deleted. Otherwise, pursuant to Article 39.1.B.7 of the Agreement, the vacancy must be filled by converting the most senior, qualified part-time flexible driver to a full-time driver.

5. Around November 2002, a full-time TTO, Bobby Reinosa, left his position with the Postal Service. Mr. Reinosa had an assignment as a yard spotter. As a yard spotter, Mr. Reinosa operated tractors to transport equipment between the docks within the Oakland P&DC facility. Because three other full-time TTOs had similar assignments to Mr. Reinosa, *i.e.* were yard spotters scheduled for the same shift as Mr. Reinosa, Mr. Inouye and I determined that the assignment previously held by Mr. Reinosa was no longer necessary to carry out our operations. Because Transportation lacked sufficient work to justify maintaining the bid held by Mr. Reinosa was "reverted" when Mr. Reinosa left his bid. A true and correct copy of the record of the reversion is attached as Exhibit B.

6. In May 2002, there were no vacant full-time TTO positions available to Postal Service employees in non-driving positions. Pursuant to Article 39.1.B.7 of the Agreement, if a full-time TTO bid remains vacant after full-time drivers have had the opportunity to bid for the position, the Postal Service must fill any available full-time TTO position with a qualified part-time flexible driver. Accordingly, no full-time TTO position can be filled by a Postal employee holding a non-driving position unless there are no qualified part-time flexible drivers available. From May 2002 to March 2005, the Oakland P&DC was fully staffed with part-time flexible drivers, and thus, had part-time flexible drivers available to fill any full-time TTO positions that became vacant. As Manager of PVS Operations, my responsibilities include determining, with Mr. Inouye, whether to request hiring authority from the Plant Manager of the Oakland P&DC for additional drivers. Transportation did not request hiring authority for additional part-time flexible drivers until around March 2005.

7.   Around the Summer of 2003, as part of the Breakthrough Productivity Initiative ("BPI"), the Postal Service's headquarters in Washington, D.C., directed the Oakland P&DC to review the number of full-time driving assignments necessary to meet its operational needs and recommended the reduction of approximately twenty (20) full-time driving assignments.  As part of the restructuring recommended by BPI, Mr. Inouye and I reviewed the existing bids to determine whether any could be deleted and restructured the schedule (*e.g.*, the scheduled days off ("SDO") or reporting times) of some existing bids to consolidate the work previously handled by multiple bids.  Mr. Inouye and I "abolished," or deleted, those bids which were no longer necessary, either because there was insufficient work available to justify maintaining the bid or because the work managed by the bid could be absorbed by another bid.  A bidding process was held around August or September 2003, at the completion of the BPI review. Those full-time drivers with assignments that remained unchanged by the review maintained their previous assignments.  Full-time drivers who held abolished assignments or assignments that had been restructured during the BPI review had to bid, by seniority, for the restructured assignments.  During the BPI review, the deleted assignments held by the most junior full-time drivers were "excessed" rather than "abolished." Unlike drivers holding abolished assignments, the drivers with excessed assignments did not enter the new bidding process.  Rather, they were given the choice of obtaining a position outside the PVS unit (also known as Motor Vehicle Craft unit) or leaving Postal Service employment.  At the completion of the bidding process held after BPI review, all full-time TTO positions were filled by full-time TTOs.  A true and correct copy of the bid assignments after BPI review is attached as Exhibit C.  After the BPI restructuring, Transportation had approximately 117 full-time driving positions, and approximately 128 full-time drivers.  Accordingly, Transportation had more full-time drivers than available driving assignments.  In addition, Transportation also had a pool of part-time flexible drivers.

8.   I have reviewed Exhibit 23 to Exhibit A (Transcript of Mr. Inouye's December 26, 2007 Deposition) of plaintiff Jeffrey Tam's Reply to Defendant's Motion for Summary

Judgment ("Exhibit 23"). Exhibit 23 is not a copy of the bid sign-up sheet used during the annual bidding process for 2003 assignments. Annual bidding for 2003 assignments occurred around November or December 2002. Accordingly, Exhibit 23 does not reflect what full-time TTO assignments were available either in May 2002, or in November or December 2002. Rather, Exhibit 23 is a copy of one of the worksheets Mr. Inouye and I used during the BPI review. During the BPI review, Mr. Inouye and I used worksheets to track those bids that would be abolished, excessed, or restructured. However, it is unclear whether Exhibit 23 contains the final listing of the bids that were to be abolished, excessed, or restructured. Exhibit 23 lists bid number 363 as "residual." In the post-BPI review bidding process, bid number 363 was filled by a full-time TTO, Michael Miller. *See* Exhibit C.

    9. The Postal Service held annual bidding for 2005 full-time driving positions around November 2004. I have reviewed Exhibit 24 to Exhibit A (Transcript of Mr. Inouye's December 26, 2007 Deposition) of Mr. Tam's Reply to Defendant's Motion for Summary Judgment ("Exhibit 24"). Exhibit 24 appears to be an incomplete, or partial copy of the sign-up sheet used in the annual bidding process for 2005 assignments. A true and correct copy of the sign-up sheet used in the annual bidding process for 2005 assignments is attached as Exhibit D. Exhibit E shows the vacant full-time TTO assignments that remained at the completion of annual bidding – around late 2004, or early 2005. Neither Exhibit 24 or Exhibit E reflect what full-time TTO assignments were available in May 2005. Pursuant to the Agreement, the six (6) vacancies that appear on Exhibit D were filled by qualified, part-time flexible drivers. The process for converting these part-time flexible drivers to full-time TTO positions took several months and was completed on June 11, 2005. A true and correct copy of a revised 2005 bid assignment sheet showing the part-time flexible drivers that filled the vacant full-time TTO positions is attached as Exhibit E. A true and correct copy of the notice of personnel actions documenting these conversions is attached as Exhibit F. To my knowledge, no vacant full-time TTO positions were available in May 2005.

    10. Mr. Tam became a part-time MVO around September 2005. Around March 2006, Mr. Tam was converted to a full-time TTO in order to fill a vacant full-time TTO bid that had not been filled after the annual bidding for 2006 full-time driving positions.

1  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

2  Executed on July 10, 2008 at Oakland, California.

                                   /s/
                          _____
                              Balvinder Chadha