IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY W. TAM, | No. C 07-2747 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JOHN E. POTTER, | |
| Defendant. | |

Now before the Court is defendant's motion for summary judgment. After the hearing on the motion, the parties submitted supplemental briefing. Having considered the arguments of counsel and the parties' submissions, the Court GRANTS defendant's motion for the reasons set forth below.

## BACKGROUND[1]

Plaintiff Jeffrey Tam is 57 years old and of Chinese national origin. Plaintiff has worked for the United States Postal Service ("USPS") since 1980. Plaintiff began working for USPS as a driver, but switched positions from full-time driver to bulk mail assistant ("clerk") in 1999. Since 2006, plaintiff has been working as a full-time driver. Plaintiff's complaint is based on several events that occurred between 1999 and 2006.

---

[1] Unless otherwise cited, all facts in the background are cited to Exhibit A of the Declaration of Jennifer Wang in Support of Defendant's Motion for Summary Judgment ("Wang Decl."). Exhibit A is the deposition of Jeffrey Tam.

## I.    Schedule

USPS assigns schedules annually using a seniority-based bidding process. Prior to the annual bidding process, management determines the reporting times and days ("shifts") for each position that will be offered in the bidding process. Chadha Decl. ¶ 3. The employee with the most seniority within the unit gets to choose first, and the employee with the least seniority within the unit must accept the last shift.

At all times relevant to the complaint, Tam had the lowest seniority among clerks and had to accept the last shift ("relief shift"). The relief shift had different starting times on different days, but most other shifts had consistent starting times. Tam worked this shift from the time he became a clerk in 1999 until he was reassigned to part-time driver in 2005. According to Tam, the different starting times of this shift caused him difficulty sleeping and negatively affected his health.

The relief shift changed several times during Tam's time as a clerk. In 2003, starting times for the relief shift were changed. These changes required plaintiff to work more than 16 hours in a row from Friday night to Saturday afternoon. Tam filed an EEO complaint about the schedule, and the parties settled on more agreeable shift hours. In 2005, the relief shift changed to have split days off, a condition discouraged by the collective bargaining agreement. Tam requested a change in this new schedule, but his managers could not change his schedule without altering others' schedules and ruining the seniority-based bidding process.

## II.    Promotion

Plaintiff applied for a promotion to supervisor in 1999, 2000, 2001, 2002, and 2003. The first four times he applied, plaintiff did not make it past the first round of the application process, a board review. Inouye Decl. ¶ 7, 8. Keith Inouye, plaintiff's manager, selected the board members from a list provided by USPS and did not give input to the board. *Id.* ¶ 6. This board, whose selection process occasionally included interviewing applicants, chose the applicants to move on to the second round. *Id.* ¶ 7. In 2003, plaintiff advanced to the second round, an interview, but failed to answer all of the interview questions. *Id.* ¶ 8. Inouye, the interviewer, offered the promotion to another applicant. *Id.*

2

### III. Reassignment

Plaintiff requested reassignment back to a full-time driving position in May 2002, but his request was denied. There were no full-time driving vacancies available to plaintiff at the time of his request because any open driving positions would have to be offered to other drivers before they could be offered to non-drivers, like plaintiff. *See* Inouye Decl. ¶ 9. According to plaintiff, there were vacant positions because another driver died in 2002, leaving his position open, and there was also evidence indicating that position number 363 was vacant. However, another driver filled position number 363, and the deceased driver's position was eliminated to cut costs. Supp. Chadha Decl. ¶ 5, 7.

Plaintiff again requested reassignment to a driving position in 2005, and he was ultimately reassigned to a part-time driving position. Plaintiff requested reassignment to a full-time driving position, but there were no full-time positions available to plaintiff because part-time drivers had claimed all the vacant full-time driving positions. *Id.* ¶ 9. Plaintiff accepted reassignment to a part-time position and has since been reassigned to a full-time position.

### IV. Annual leave

On January 27, 2005 plaintiff requested annual leave from February 9-11, 2005 for Chinese New Year. However, USPS requires at least a two-week notice for annual leave requests to allow managers time to find workers to cover the employees absence. Chadha Decl. ¶ 6. Plaintiff failed to meet the two week requirement, so his manager denied his request.

### V. Overtime

On February 12, 2005, plaintiff was not called in to work overtime on his day off, and Jones, an African-American employee, was called in to work early instead. Calling an employee in on his day off requires the employer to pay eight hours of overtime. Chadha Decl. ¶ 7. Instead, Chadha called Jones to work early on a day he was scheduled to work, which cost USPS four hours of overtime. *Id.*

### VI. Intimidation and retaliation

According to plaintiff, Inouye approached him on September 23, 2004 and intimidated him by

3

telling him he fought against the system. Inouye denies intimidating plaintiff. Inouye Decl. ¶ 13. Also according to plaintiff, Chadha changed plaintiff's schedule in 2005 in retaliation for an EEO complaint plaintiff filed. Chadha maintains that he changed the schedule to increase the overlap of clerks' schedules and reduce the need for overtime. Chadha Decl. ¶ 5.

**VII.    Procedural history**

    **A.    EEO complaints**

Plaintiff filed his first EEO complaint related to his work schedule. The parties settled the complaint in 2003.

In 2004, plaintiff filed a second EEO complaint alleging race and national origin discrimination based on Inouye's failure to promote him, Inouye's alleged intimidation, plaintiff's work schedule, defendant's denial of his reassignment requests, and defendant's failure to investigate damage to plaintiff's personal television set. Wang Decl. Ex. D. Plaintiff later amended the complaint to include allegations that he had not received an agreed-upon pay adjustment, that Chadha restructured his schedule in retaliation for the previous EEO complaint, that Chadha's denial of his annual leave constituted discrimination, and that management discriminated against him by denying him overtime. *Id.* at 10-11. The agency dismissed plaintiff's intimidation claim for failure to state a claim and dismissed his failure to promote claims as untimely. Wang Decl. Ex. E. Plaintiff appealed to the EEOC, Office of Federal Operations, which affirmed the agency's decision. *Id.*

Plaintiff filed his third EEO complaint alleging discrimination when his supervisor disallowed 1.5 hours of overtime and he was reassigned to a part-time driver position. Wang Decl. Ex. F. The agency issued a final decision, finding no discrimination. Wang Decl. Ex. G.

    **B.    Instant case**

Plaintiff filed a complaint before this Court alleging that his application for promotion, requests for reassignment to full-time driver, requests for schedule changes, and requests for annual leave were denied because of discrimination. He further alleges that he was not called in for overtime and intimidated by his manager because of discrimination. Finally, plaintiff alleges age discrimination,

4

hostile work environment, and breach of contract claims for the first time in the complaint before this Court.[2]

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.*

---

[2]Plaintiff appears *pro se* in this matter. However, in October, 2007, shortly after the initial case management conference, plaintiff was referred to the Assisted Settlement Conference Program. An attorney was specially appointed to represent plaintiff in connection with a judicially-supervised settlement conference proceeding. The settlement conference took place in February, 2008 before a Magistrate-Judge. The matter did not settle, and appointed counsel was discharged on May 1, 2008.

**DISCUSSION**

Plaintiff alleges discrimination on the basis of age, race, and national origin; retaliation for filing claims with the EEOC; hostile work environment; and breach of the collective bargaining agreement.

## I.   Discrimination claims

To establish a prima facie case of discrimination under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably than he was. *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003). Plaintiff's prima facie case requires only a minimal showing . *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005).

Once the plaintiff establishes a prima facie case, "the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision." *Leong*, 347 F.3d at 1124. Although the burden of production shifts, the burden of proof remains with the plaintiff. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

If the employer provides a nondiscriminatory reason, "the burden returns to the plaintiff to show that the articulated reason is a pretext for discrimination." *Leong*, 347 F.3d at 1124. To demonstrate that the stated reason is a pretext for discrimination the plaintiff can either directly persuade the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658-59 (9th Cir. 2002).

Plaintiff alleges discrimination based on age, race, and national origin in defendant's denials of his applications for promotions, requests for reassignment, requests for work schedule changes, and request for annual leave. Plaintiff also alleges that defendant denied him overtime and intimidated him for discriminatory reasons.

### A.   Age discrimination

This Court lacks jurisdiction over plaintiff's age discrimination claims because plaintiff never filed an EEOC claim related to age discrimination. *See Shah v. Mt. Zion Hosp. & Med. Ctr.*, 642 F.2d 268, 272 (9th Cir. 1981). Therefore, the Court grants defendant summary judgment on plaintiff's age discrimination claims.

6

### B. Promotion

Plaintiff claims he was discriminated against on the basis of race and national origin when he was not promoted to a supervisor position after applying in 1999, 2000, 2001, 2002, and 2003. Assuming *arguendo* that plaintiff could establish a prima facie case of discrimination and that plaintiff timely filed EEOC complaints, defendant is entitled to summary judgment if plaintiff offers no evidence to rebut defendant's legitimate, nondiscriminatory reason for not promoting him.

Defendant contends it had a legitimate reason to not promote plaintiff because other applicants were better qualified. *See* Inouye Decl. ¶ 7. Choosing to promote a better qualified applicant is a legitimate, non-discriminatory reason for denying a promotion unless it is a pretext for discrimination. *See e.g., Fernandez v. Wynn Oil Co.*, 653 F.2d 1273, 1275-76 (9th Cir. 1981). Defendant evaluates promotion applicants in a two-stage process. *Id.* First, all applicants are reviewed by a board, whose review process may include candidate interviews. *Id.* Second, the best applicants from the first process are interviewed by a manager. *Id.* Plaintiff did not pass the board review until his fifth application in 2003. *Id. ¶ 8.* Keith Inouye, a manager, interviewed plaintiff in 2003, but plaintiff failed to answer some of the interview questions so he did not receive a promotion. *Id.* Based on plaintiff's answers, Inouye believed another applicant to be better qualified for the position. *Id.*

Plaintiff attempts to provide evidence that defendant's stated reason is a pretext for discrimination. Contrary to defendant's declaration that a board review was used each year in question, plaintiff has submitted his own declaration stating that Inouye did not use a board review in 1999, 2000, or 2003. Tam Decl. ¶ 2. Yet, plaintiff provides no basis for this knowledge. In opposing a motion for summary judgment, plaintiff must produce more evidence than an uncorroborated declaration to create a genuine issue of material fact. *See Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002). Moreover, it is curious that plaintiff proclaims defendant is lying about using a review board in his declaration submitted on June 12, 2008, Tam Decl. ¶ 2, after not knowing how the board review process worked during his deposition on December 12, 2007, Wang Decl. Ex. A 63:10-12, 64:20-22, 70:9-10. The Court cannot give much weight to such a dramatic change in personal knowledge unaccompanied by corroboration.

7

1  The Court grants summary judgment in favor of defendant on plaintiff's discrimination claims
2  related to failure to promote because plaintiff has failed to raise a triable issue of fact regarding pretext.

### C. Reassignment

Plaintiff claims he was discriminated against on the basis of race and national origin after his requests for reassignment to a full-time driving position were denied in 2002 when he received no reassignment, and 2005, when he was only reassigned to a part-time driving position. Defendant contends, *inter alia*, that even if plaintiff has met his prima facie burden, defendant had a legitimate, non-discriminatory reason for denying plaintiff's reassignment requests.

Defendant submits evidence demonstrating that no vacant positions were available at the time of plaintiff's requests. Plaintiff attempts to create a factual issue by introducing a document indicating that there was at least one vacant full-time position following the annual bidding for 2003 full-time driving positions. However, this document is not actually the results of the bidding process, but is an internal post office document used to determine operational needs. Tam Decl. Ex. A 89:19-90:19. The purportedly vacant position was actually filled by another driver, who had priority over plaintiff pursuant to the collective bargaining agreement. Supp. Chadha Decl. ¶ 7.

Plaintiff also attempts to create a factual issue surrounding the number of vacant full-time positions available to him in 2005. Plaintiff produced evidence demonstrating that there were vacant full-time positions in 2005, but these positions were only vacant until part-time drivers filled them. Per the collective bargaining agreement, clerks like plaintiff are only able to bid for driving positions after other drivers have had the opportunity to bid for them. Plaintiff can produce no evidence demonstrating that there were vacant positions available to him at the time of his request in May 2005.

Defendant has established a legitimate, nondiscriminatory reason for denying plaintiff's reassignment requests. *See Kortan v. State of Cal.*, 5 F. Supp. 2d 843, 854 (C.D. Cal. 1998) (lack of vacancies is a legitimate reason to deny a transfer request). Accordingly, the Court grants defendant summary judgment on this issue.

### D. Work schedule

Plaintiff alleges that defendant discriminated against him by refusing to make the relief work schedule more uniform in the middle of a bid or for a later bid process. Plaintiff had to work the relief schedule each year because he had the lowest seniority among clerks, and he found it difficult to cope with the different starting hours the relief shift required. However, plaintiff was not able to establish a prima facie case of discrimination because he has not provided any evidence of similarly situated employees who were treated more favorably. *See* Wang Decl. Ex. A at 97:20-98:14, 171:7-22. Therefore, the Court grants defendant summary judgment on this issue.

### E. Annual leave

Plaintiff alleges discrimination in defendant's refusal to grant him annual leave from February 9-11, 2005 during Chinese New Year. On January 27, 2005, plaintiff requested leave but gave less than two-weeks' notice, in violation of company policy. Chadha Decl. ¶ 6. Moreover, plaintiff requested leave on days when he was the only clerk scheduled to work because another clerk had already requested leave. These facts establish that defendant had a legitimate, non-discriminatory reason to deny plaintiff's leave request. Plaintiff has failed to introduce any evidence that defendant's actions were a pretext for discrimination. Accordingly, the Court grants defendant summary judgment on this issue.

### F. Overtime

Plaintiff alleges defendant discriminated against him by not calling him in for overtime on February 12, 2005.[3] Defendant contends that plaintiff did not meet the fourth element of his prima facie case, and also that there was a legitimate, non-discriminatory reason for not calling plaintiff in for overtime.

Plaintiff has not established the fourth element of his prima facie case, that employees similarly situated to him were treated more favorably. Plaintiff contends that William Jones was similarly situated to him and was called in to work overtime on February 12, 2005. Jones, however, was already scheduled

---

[3] Plaintiff also introduces deposition evidence relating to a general policy of discrimination, but his complaint only addressed the events on February 12, 2005. The Court did not evaluate plaintiff's other evidence because it did not relate to the allegations in his complaint, and defendant did not have a chance to discover evidence to refute it.

9

to work on that day and was merely called in to work early. Thus, plaintiff has not produced any evidence of similarly situated employees treated more favorably.

Furthermore, defendant had a legitimate, non-discriminatory reason for not calling plaintiff in for overtime. Defendant contends that it was justified in not calling plaintiff in for overtime to minimize business costs. On February 12, 2005, defendant called William Jones into work early, costing USPS four hours of overtime instead of the eight plaintiff would cost. Chadha Decl. ¶ 7. Thus, defendant had a legitimate, non-discriminatory reason for not calling plaintiff in for overtime. Accordingly, the Court grants defendant summary judgment on this issue.

### G. Intimidation

Plaintiff alleges Inouye intimidated him by "telling him he fights against the system" and by "telling [plaintiff] to file a complaint or lawsuit." Plaintiff does not indicate that any harmful action followed these statements. These statements alone do not establish a discrimination claim because they do not constitute adverse employment actions.[4] *See Helgeson v. Am. Int'l Group, Inc.*, 44 F. Supp. 2d 1091, 1098 (S.D. Cal. 1999).

## II. Retaliation

Plaintiff alleges defendant retaliated against him for filing discrimination claims with the EEOC. Like discrimination claims, retaliation claims are evaluated using a burden shifting framework. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004). If plaintiff can establish a prima facie case, the burden shifts to defendant to demonstrate a legitimate reason for the disputed action, which plaintiff may attempt to rebut. *Id.*

Plaintiff claims defendant retaliated against him by changing his work schedule to have nonconsecutive days off in 2005. Wang Decl. Ex. A at 202:3-203:2. However, defendant states that work schedules were restructured to create more overlap in reporting times and thus decrease overtime

---

[4] For similar reasons, plaintiff's allegations do not establish a retaliation claim. *See McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004) (to establish a prima facie case of retaliation, plaintiff must establish he was subject to an adverse employment action).

10

costs. Chadha Decl. ¶ 5. Plaintiff provides no evidence demonstrating that defendant's stated reason is a pretext for discrimination. Accordingly, the Court grants summary judgment to defendant on plaintiff's retaliation claim.

### III.  Hostile work environment

Plaintiff alleges defendant created a hostile work environment by allowing other employees to harass him, but he never filed an EEOC complaint related to harassment or a hostile work environment. *See* Wang Decl. Ex. E, F, & G. The Court only has jurisdiction over claims reasonably related to the charges filed with the EEOC. *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001). Plaintiff's EEOC complaints were limited to adverse employment actions taken by two managers, Inouye and Chadha. In his filings with this Court, plaintiff alleges for the first time that other employees used racial slurs and harassed him in ways that were completely unrelated to adverse employment actions. These allegations are not reasonably related to the complaints in plaintiff's EEOC claims. Therefore, the Court grants defendant summary judgment on this issue.

### IV.  Contract

Plaintiff alleges defendant committed numerous violations of the collective bargaining agreement. However, plaintiff cannot maintain an action for breach of contract unless the union breached its duty of fair representation. *See Johnson v. U.S. Postal Service*, 756 F.2d 1461, 1467 (9th Cir. 1985). The union breaches its duty of fair representation only if it acts in an arbitrary, discriminatory, or bad-faith manner. *Id.* at 1465. Plaintiff fails to introduce any evidence demonstrating that the union acted in an arbitrary, discriminatory, or bad-faith manner. Accordingly, the Court grants summary judgment in favor of defendant on plaintiff's contractual claims.

///

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby grants summary judgment to defendant on all of plaintiff's claims.

**IT IS SO ORDERED.**

Dated: July 21, 2008

SUSAN ILLSTON
United States District Judge